# Exhibit A

# SETTLEMENT AGREEMENT

This is a Settlement Agreement (the "Agreement"), effective as of August 29, 2018 (the "Effective Date"), by and between:

Controls Southeast, Inc. ("CSI" or "Plaintiff"), a North Carolina corporation having a principal place of business at 12201 Nations Ford Road, Pineville, North Carolina,

QMax Industries, LLC d/b/a QMax Industries, Inc., a North Carolina limited liability company having a principal place of business at 10615 Texland Boulevard, Suite 400, Charlotte, North Carolina ("QMax"),

Thomas W. Perry ("Perry"), previously residing at the address of 3914 Huntcliff Drive, Charlotte, North Carolina and having a temporary address of 117 Marlin Dr W, Pittsburgh, PA 15216, and

Peter E. Kobylarz, Jr. ("Kobylarz"), a citizen of North Carolina having an address of 8615 Ridgeline Lane, Charlotte, North Carolina; (collectively, QMax, Perry, and Kobylarz are "Defendants").

Individually, each of CSI, QMax, Perry, and Kobylarz are a "Party" and, collectively, "Parties."

**WHEREAS,** CSI filed a complaint (the "Complaint") against Defendants in the United States District Court for the Western District of North Carolina, Civil Action No. 3:16-cv-00230-FDW-DSC (the "Lawsuit") seeking declaratory judgement that CSI is the owner of U.S. Patent Nos. 8,469,082, U.S. Patent No. 8,899,310, and 8,662,156 (collectively, "the Patents-in-Suit"), as well as all applications and patents claiming priority to or otherwise related to any of the Patents-in-Suit (including U.S. Provisional Patent Appl. Ser. No. 61/120,425 and U.S. Provisional Patent Appl. Ser. No. 61/167,023, as well as all domestic and foreign applications and patents claiming priority in, or otherwise related to, U.S. Provisional Patent Appl. Ser. No. 61/120,425 and U.S. Provisional Patent Appl. Ser. No. 61/167,023) (collectively the "Patents-To-Be-Assigned");

**WHEREAS**, CSI also alleged in the Complaint that one or more of Defendants misappropriated CSI's trade secrets, including its CTCirc program;

**WHEREAS**, CSI also alleged in the Complaint that one or more of Defendants committed unfair or deceptive acts, practices, and methods of competition in violation of N.C. Gen. Stat. § 75-1.1 against CSI; and

**WHEREAS**, the Parties wish to settle this dispute between them.

**NOW, THEREFORE**, in consideration of the above, the mutual benefits set forth below, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto, intending to be legally bound, agree as follows:

**1.0    Preamble and Definitions**

1.1    The foregoing recitals and **WHEREAS** clauses above are incorporated herein by reference as if fully set forth.

1.2    For the purposes of the Agreement, the following terms shall have the following meanings:

"Government Authority" means any federal, state, national, supranational, local, or other government, whether domestic or foreign, including any subdivision, department, agency, instrumentality, authority (including any regulatory and administrative authority), body, commission, board, or bureau thereof, or any court, tribunal, or arbitrator.

"Person" means any individual, corporation, partnership, joint venture, limited liability company, Government Authority, unincorporated organization, trust, association, or other legal or governmental entity.

"Sulphur Field" means industrial processes such as sulphur recovery units and tail gas units, as well as any process which concerns the manufacture, transportation, or storage of any component which includes over twenty percent (20%) elemental sulfur or hydrogen sulfide.

**2.0    Patent Assignment**

2.1    Subject to the terms and conditions set forth herein, QMax and Perry to the extent any of them currently own or control rights in the Patents-To-Be-Assigned, hereby irrevocably sell, assign, transfer, and convey to Plaintiff, and Plaintiff hereby accepts, all of QMax's and Perry's right, title, and interest in and to:

2.1.1   The Patents-To-Be-Assigned, all inventions disclosed therein, as well as any applications being prepared or prepared, but not yet filed that could claim priority to or be related to the Patents-To-Be-Assigned, as well as any and all inventions disclosed therein;

2.1.2   Any and all claims and causes of action with respect to any of the Patents-To-Be-Assigned, accruing before, on, or after the Effective Date, including all rights to and claims for damages, restitution, and injunctive and other legal and equitable relief for past, present, and future infringement, misappropriation, violation, breach, or default; and

2.1.3   Any and all other rights, privileges, and protections of any kind whatsoever of QMax and Perry or any of them accruing under any of the foregoing provided by any applicable law, treaty, or other international convention throughout the world (collectively, including all rights transferred in this Section 2.0, the "Acquired Rights").

2.2   No later than sixty (60) days from the Effective Date of this Agreement, QMax and Perry shall:

2.2.1   Deliver assignment(s) in a form to be specified by CSI (an acceptable Assignment is attached as Exhibit 1), and duly executed by each such Defendant, transferring all of Defendants' right, title, and interest in and to the Acquired Rights (in the event that modifications or a new assignment is required for legal or administrative purposes to carry out the intent of this assignment anywhere in the United States or anywhere in the World, Defendants agree to cooperate with CSI in executing same); and

2.2.2   Deliver the complete prosecution files, including original granted patent(s), for all Acquired Rights.

2.2.3   Cease all representation of ownership or use of any Acquired Rights. Defendants shall remove all reference to the Acquired Rights on its web pages and advertisements and cease all use of any materials referencing the Acquired Rights.

2.4   Any Breach of this Section 2 by any Defendant shall be a material breach of this Agreement.

### 3.0 CSI's Trade Secrets

3.1     Within 30 days of the Effective Date, Defendants shall:

3.1.1   Cease all use of and reference to the QSIM program (including any program derived from the QSIM program), and never use it again in any capacity;

3.1.2   destroy all copies of the QSIM program and any program derived from it;

3.1.3   Cease all use of the CTCirc program (including its finite difference UA methodology) in any form, and never use it again in any capacity;

3.1.4   Destroy all copies of the CTCirc program;

3.1.5   Cease any and all use of the QSIM name; and

3.1.6   Sign a declaration attesting that all requirements of Section 3.0 have been complied with and that all aspects of QSIM and CTCirc, and especially any calculations relating to these programs, shall be maintained as confidential.

3.2     Outside counsel to CSI shall be permitted to maintain one or more copies of QSIM and may review or disclose it only for purposes of ensuring compliance with this Agreement.

3.3     Any breach of this Section 3.0 by any Defendant shall be a material breach of this Agreement.

### 4.0 Restrictions On Defendants

4.1     Defendants shall refrain from selling products in the Sulphur Field, directly or indirectly, for a period of three (3) years from the Effective Date ("the Exclusionary Period").

4.1.1   **Limited Exception for Four Identified Contracts**.  Notwithstanding the restriction set forth in Section 4.1, QMax may, during the Exclusionary Period, complete the backlog of 4 contracts (listed in Exhibit 2) that it has in place as of August 24, 2018.  As a precondition to this limited exception, QMax shall first identify the parties and product quantities of these contracts to CSI.

4.1.2   During the Exclusionary Period, QMax shall condition the sale of its products to its distributors and representatives in writing on the basis that no products sold by QMax to its distributors and/or representatives may be subsequently sold to, transferred to or otherwise used in the Sulphur Field.

4.1.3   QMax and Perry thereof shall provide an annual declaration, attesting that neither has directly or indirectly sold into the Sulphur Field.  As detailed in Section 7.0, CSI shall have the right to verify compliance with Section 4.0.

4.2   Any breach of this Section 4.0 by any Defendant shall be a material breach of this Agreement.

## 5.0   Payment

5.1   Going forward from August 24, 2018, Defendants shall pay to CSI an amount ███████████████████████████████████████████████████████████ ██████████████████████████████

5.2   Payments shall be made by check payable to Controls Southeast, Inc.

5.3   Payments shall be made on a quarterly basis in United States dollars, with the first payment occurring on October 15, 2018.

5.4   As detailed in Section 7.0, CSI shall have the right to verify compliance with Section 5.0.

5.5   The amount and term of the payment set forth in Section 5.1 shall remain confidential except as (a) required by any Governmental Authority, or in connection with a governmental review of a Party's business affairs; (b) required by law or legal process including without limitation as required by securities laws; (c) reasonably necessary to enforce the terms of this Agreement, and/or (d) reasonably necessary to disclose to legal counsel, consultants or accountants.

5.6   Any breach of Section 5.1 – 5.4 by any Defendant shall be a material breach of this Agreement.

**6.0    No License**.

6.1    No right or license is granted to any Defendant by implication, estoppel, or otherwise to any know-how, trade secret, patent (including, but not limited to the Acquired Rights), or other intellectual property right owned or controlled by CSI.

**7.0    Right to Audit**

7.1    Defendants shall establish and maintain a reasonable accounting system that enables CSI to readily identify Defendants': 1) assets, expenses, costs of goods, and sales related to extruded aluminum products; and 2) sales of goods by industry ("the Accounting System").

7.2    The Accounting System, along with any supporting or underlying documents and materials (including accounting records), shall be maintained for a period of seven (7) years from the Effective Date.

7.3    Upon reasonable request by CSI, Defendants shall provide access to the Accounting System to a third party auditor selected by CSI. The Accounting System, and all supporting or underlying documents and materials shall be made available to the auditor during normal business hours. All information disclosed in connection with this section shall be used only for purposes of verifying compliance with this Agreement and, absent a difference in the amount reported by Defendants and the amount determined by the auditor or other discrepancy, no information obtained during any audit shall be disclosed to CSI.

7.4    The cost of any audits conducted under Section 7.0 shall be borne by CSI, unless the audit identifies either that Defendants: 1) have underpaid CSI by more than one-half of one percent (.5%); or 2) sold any goods into the Sulphur Field during the Exclusionary Period. In either instance, Defendants shall reimburse CSI for the total costs of the audit.

**8.0    Release**

8.1    Subject to the terms and conditions set forth in this Agreement, the sufficiency of which each party expressly acknowledges, CSI, on behalf of itself and its assigns and successors in interest, hereby fully, finally, unconditionally, irrevocably and forever releases, acquits, settles, and discharges Defendants, and their respective current and former officers, directors, employees, agents, representatives, shareholders,

predecessors, and permitted successors and assigns, as well as all suppliers, manufacturers, end-users, distributors, resellers, and customers of Defendants, from and against any and all claims, counterclaims, actions, causes of action (derivative or direct), judgments or any other rights to compensation, punitive or other damages, costs, expenses, and fees (including attorneys' fees) of any kind or description, whether in law or in equity, known or unknown, suspected or unsuspected, realized or unrealized, with respect to any matter or thing done or omitted, or suffered to be done or omitted, prior to the Effective Date, including, without limitation, in any way directly or indirectly arising out of, relating, or pertaining to any of the transactions, claims, counterclaims, defenses or occurrences asserted and/or that could have been asserted in the Lawsuit. Nothing in this Section is intended by CSI to release Defendants from any of their obligations under this Agreement, nor of causes of action accruing on or after August 24, 2018, nor provide an express or implied license to any other person or entity.

8.2     Subject to the terms and conditions set forth in this Agreement, the sufficiency of which each party expressly acknowledges, each Defendant on behalf of themselves and their assigns and successors in interest, hereby fully, finally, unconditionally, irrevocably and forever releases, acquits, settles, and discharges CSI and its parent(s) and their respective current and former officers, directors, employees, agents, representatives, shareholders, predecessors, and permitted successors and assigns, as well as all suppliers, manufacturers, end-users, distributors, resellers, and customers of CSI, from and against any and all claims, counterclaims, actions, causes of action (derivative or direct), judgments or any other rights to compensation, punitive or other damages, costs, expenses, and fees (including attorneys' fees) of any kind or description, whether in law or in equity, known or unknown, suspected or unsuspected, realized or unrealized, with respect to any matter or thing done or omitted, or suffered to be done or omitted, prior to the Effective Date, including, without limitation, in any way directly or indirectly arising out of, relating, or pertaining to any of the transactions, claims, counterclaims, defenses or occurrences asserted and/or that could have been asserted in the Lawsuit.

## 9.0     Dispute Resolution Prior to Enforcement of the Patents-To-Be-Assigned

9.1     Before bringing any cause of action for patent infringement involving the Patents-To-Be-Assigned, CSI will notify Defendants of any claim of patent infringement relating to the Patents-To-Be-Assigned, and will first arrange a meeting between principals and, if necessary, then a mediation, all to be conducted by the parties in good faith. Any

such notice shall be sent by email to tperry@qmaxindustries.com and by First Class Mail to Thomas W. Perry, P.O. Box 470924, Charlotte, NC 28247.  CSI shall not bring any suit for enforcement of any of the Patents-To-Be-Assigned before ninety (90) days following the initial notice to Defendants.

## 10.0   Dismissals

10.1   Promptly following execution of the Agreement, the parties shall file a stipulation of dismissal with prejudice in the Lawsuit.  The parties shall promptly proceed with any and all additional procedures needed to fully dismiss and close this action.

10.2   Promptly following execution of the Agreement, the parties will jointly and immediately notify the Patent Trial and Appeal Board regarding settlement and the parties' intent to dismiss IPR2017-00977 ("the IPR").  The parties will, within three (3) days of receiving permission from the Patent Trial and Appeal Board, file a stipulation of dismissal before the Patent Trial and Appeal Board relating to the IPR.  The parties shall promptly proceed with any and all additional procedures needed to fully dismiss and terminate the IPR.

10.3   Each party shall bear its own costs and attorneys' fees in connection with the Lawsuit, and shall have no right to appeal.

## 11.0   Representations, Warranties, and Covenants

11.1   Defendants represent, warrant, and covenant that they exclusively own all rights, title, and interest in and to the Acquired Rights, and have not assigned or otherwise transferred any rights to the Acquired Rights to any third parties.

11.2   Defendants represent, warrant, and covenant that they have all necessary rights and power and are duly authorized to grant the rights granted herein.

11.3   Defendants represent, warrant, and covenant that no third party has any right, title or interest in, or any right to recover from Defendants under the Acquired Rights covered by this Agreement.

11.4   Defendants represent, warrant, and covenant that they, as well as their employees, officers, directors, representatives, consultants, agents, and attorneys, have not disclosed, and shall not disclose, to any third party any details concerning the calculations

performed by CTCirc or QSim (including, but not limited to, the UA methodology), nor any physical property data relied upon by CTCirc or QSim.

11.5    Defendants represent, warrant, and covenant that they will not use other Persons to circumvent the obligations and restrictions set forth in Sections 4 and 5.

## 12.0  Miscellaneous

12.1    By affixing their signatures, each person signing this Agreement and its attachments personally warrants that he or she has been duly authorized and has full authority: (a) to execute this Agreement on behalf of the party on whose behalf he or she is signing, and (b) irrevocably to bind such party and its successors and assigns to the terms of this Agreement.

12.2    The parties warrant and represent that they are permitted to enter into this Agreement and that the terms and obligations of this Agreement are not inconsistent with any obligations or understandings with any third party.

12.3    In entering into this Agreement, the parties acknowledge that they have relied upon the legal advice of their respective attorneys, who are the attorneys of their own choosing, that such terms are fully understood and voluntarily accepted by them, and that, other than the consideration set forth herein, no promises or representations of any kind have been made to them by the other party. The parties represent and acknowledge that in executing this Agreement they did not rely, and have not relied, upon any representation or statement, whether oral or written, made by the other party or by that other party's agents, representatives, or attorneys with regard to the subject matter, basis or effect of this Agreement or otherwise.  The Defendants further acknowledge that they have accounted for and waived any conflicts of interest with advice of counsel, to the extent any such conflicts exist.

12.4    If any provision or part of a provision of this Agreement is held to be illegal, invalid, or unenforceable under any present or future law by the final judgment of a court of competent jurisdiction, such illegality, invalidity or unenforceability shall not affect the remainder of the provision or other provisions of this Agreement.  It is the intention of the parties that if any such provision is held to be invalid, illegal or unenforceable, there will be added in lieu thereof a provision as similar in terms to such provision as is possible, and that such added provision will be legal, valid and enforceable.  This paragraph shall be

inoperative if the Agreement, without the offending provision or with the added provisions, would be clearly inconsistent with the present intention of the parties.

12.5    This Agreement constitutes the entire and complete understanding of the parties, and supersedes all previous communications, representations, understandings, or agreements, whether written or oral, with respect to the subject matter of this Agreement. This Agreement may be amended or modified only by written instrument executed by all parties.

12.6    Unless otherwise expressly provided in this Agreement, the rights and remedies under this Agreement are in addition to, and not in limitation of, other rights and remedies, at law or in equity, and exercise of one right or remedy will not be deemed a waiver of any other right or remedy.

12.7    No cancellation, modification, amendment, deletion, addition, or other change in this Agreement, attachment or any provision of this Agreement, or waiver of any right or remedy provided, shall be effective for any purpose unless specifically set forth in writing and signed by all parties.  No waiver of any right or remedy in respect of any occurrence or event on one occasion shall be deemed a waiver of such right or remedy on any other occasion.

12.8    In the event of any dispute over this Agreement, any action to resolve such dispute shall be governed by and construed in accordance with the laws of the State of North Carolina.  In any legal proceeding arising out of or relating to this Agreement, the parties consent to the exclusive jurisdiction of the state courts located in Mecklenburg County North Carolina and federal courts located in the Western District of North Carolina. Both parties expressly consent to and waive any objection to the personal jurisdiction and venue of these courts.

12.9    This Agreement, and the covenants and obligations set forth herein, shall inure to the benefit of, and be binding upon, the parties hereto, and each of their respective successors, heirs, and assigns.  This Agreement may be assigned by a party to any third party that becomes a successor in interest (by purchase of assets or stock, or by merger or otherwise) to that party.

12.10  This Agreement is executed by the parties on the Effective Date and may be executed in one or more counterparts, including by facsimile or .pdf signature, each of

which when so executed and delivered shall be deemed to be an original, but all of which taken together form one and the same instrument.

**IN WITNESS WHEREOF**, and agreeing to be legally bound, the parties hereto have caused this Agreement to be duly executed by their authorized representative as indicated below.

CONTROLS SOUTHEAST, INC.

By: _____

James O. Davis, Vice President

QMAX INDUSTRIES, LLC

By: _____

THOMAS W. PERRY, President

THOMAS W. PERRY (AN INDIVIDUAL)

_____

PETER E. KOBYLARZ, JR. (AN INDIVIDUAL)

_____

**IN WITNESS WHEREOF**, and agreeing to be legally bound, the parties hereto have caused this Agreement to be duly executed by their authorized representative as indicated below.

CONTROLS SOUTHEAST, INC.


By: _____


Its: _____


QMAX INDUSTRIES, LLC


By: _____

THOMAS W. PERRY, President


THOMAS PERRY (AN INDIVIDUAL)


_____


PETER E. KOBYLARZ, JR. (AN INDIVIDUAL)

By: _____  8/29/2018

**IN WITNESS WHEREOF**, and agreeing to be legally bound, the parties hereto have caused this Agreement to be duly executed by their authorized representative as indicated below.

CONTROLS SOUTHEAST, INC.

By: _____

Its: _____

QMAX INDUSTRIES, LLC

By: _____

THOMAS W. PERRY, President

THOMAS PERRY (AN INDIVIDUAL)

_____

PETER E. KOBYLARZ, JR. (AN INDIVIDUAL)

By: _____

# Exhibit 1

# ASSIGNMENT

WHEREAS, Thomas W. Perry, a citizen of North Carolina having an address of 3914 Huntcliff Drive, Charlotte, North Carolina ("Assignor"), has developed, otherwise obtained, or owns certain intellectual property outlined in the attached Schedule A, (the "IP Assets");

WHEREAS, CSI is a North Carolina corporation having a principal place of business at 12201 Nations Ford Road, Pineville, North Carolina ("Assignee"), is desirous of acquiring the entire right, title, good will and interest in, to and under the IP Assets, and in, to and under any Letters Patent or similar legal protection to be, or having been, obtained therefor in the United States of America, its territorial possessions and in any and all countries foreign thereto;

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Assignor intending to be legally bound, hereby sells, assigns, transfers, and conveys unto the Assignee, its successors, and assigns, the entire right, title, and interest in and to the IP Assets, and to all Letters Patent(s) and all applications or continuations, continuations-in-part, divisionals, renewals, substitutes, reissues, or reexaminations thereof or any legal equivalents or similar legal protections arising therefrom, not only in the United States and its territorial possessions, but in all countries foreign thereto, including the right to claim priority under any International Convention and all Letters Patents, including reissues to be obtained therefore including any and all foreign patent rights corresponding thereto and including all claims and causes of action with respect to any of the foregoing, including the right to sue for and collect past, present, and future damages for Assignee's benefit and enjoyment.

Assignor hereby warrants that no assignment, sale, agreement or encumbrance has been or will be made or entered into which would conflict with this Assignment.

Assignor agrees that it shall be legally bound, upon request by Assignee or its successors or assigns or a legal representative thereof, to supply all information and evidence of which Assignor has knowledge or possession, relating to the making and practice of any inventions relating to the IP Assets, to testify in any legal proceeding relating thereto, to execute all instruments proper to patent any inventions relating to the IP Assets in the United States of America and foreign countries in the name of Assignee, and to execute all instruments proper to carry out the intent of this instrument.

In witness whereof, agreeing to be legally bound, this Assignment is executed and effective on the date indicated below.


Thomas W. Perry


_____
Signature


_____
Dated


STATE OF _____                    )
                                            ) ss.
COUNTY OF _____                       )


On the _____ day of _____, _____, before me personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the foregoing instrument, who acknowledged the instrument to be his/her free act and deed for the uses and purposes mentioned in the instrument.


                                    _____
                                    Notary Public
                                    Printed Name:

My Commission Expires:
_____

## <u>SCHEDULE A</u>

1. U.S. Patent No. 8,469,082
2. U.S. Patent No. 8,899,310
3. U.S. Patent No. 8,662,156
4. U.S. Patent No. 9,841,239
5. U.S. Provisional Patent Appl. Ser. No. 61/120,425 (and all U.S. and foreign applications and patents claiming priority thereto)
6. U.S. Provisional Patent Appl. Ser. No. 61/167,023 (and all U.S. and foreign applications and patents claiming priority thereto)
7. U.S. Patent Appl. Ser. No. 13/154,142
8. U.S. Patent Appl. Ser. No. 14/556,057
9. U.S. Patent Appl. Ser. No. 15/484,109
10. U.S. Patent Appl. Ser. No. 15/484,111
11. U.S. Patent Appl. Ser. No. 15/484,112
12. U.S. Patent Appl. Ser. No. 15/484,115
13. U.S. Patent Appl. Ser. No. 15/484,117
14. U.S. Patent Appl. Ser. No. 15/484,120
15. U.S. Patent Appl. Ser. No. 15/484,123
16. PCT/US2009/066904

# ASSIGNMENT

WHEREAS, QMax Industries, LLC d/b/a QMax Industries, Inc., a North Carolina limited liability company having a principal place of business at 10615 Texland Boulevard, Suite 400, Charlotte, North Carolina ("Assignor"), owns certain intellectual property outlined in the attached Schedule A, (the "IP Assets");

WHEREAS, CSI is a North Carolina corporation having a principal place of business at 12201 Nations Ford Road, Pineville, North Carolina ("Assignee"), is desirous of acquiring the entire right, title, good will and interest in, to and under the IP Assets, and in, to and under any Letters Patent or similar legal protection to be, or having been, obtained therefor in the United States of America, its territorial possessions and in any and all countries foreign thereto;

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Assignor intending to be legally bound, hereby sells, assigns, transfers, and conveys unto the Assignee, its successors, and assigns, the entire right, title, and interest in and to the IP Assets, and to all Letters Patent(s) and all applications or continuations, continuations-in-part, divisionals, renewals, substitutes, reissues, or reexaminations thereof or any legal equivalents or similar legal protections arising therefrom, not only in the United States and its territorial possessions, but in all countries foreign thereto, including the right to claim priority under any International Convention and all Letters Patents, including reissues to be obtained therefore including any and all foreign patent rights corresponding thereto and including all claims and causes of action with respect to any of the foregoing, including the right to sue for and collect past, present, and future damages for Assignee's benefit and enjoyment.

Assignor hereby warrants that no assignment, sale, agreement or encumbrance has been or will be made or entered into which would conflict with this Assignment.

Assignor agrees that it shall be legally bound, upon request by Assignee or its successors or assigns or a legal representative thereof, to supply all information and evidence of which Assignor has knowledge or possession, relating to the making and practice of any inventions relating to the IP Assets, to testify in any legal proceeding relating thereto, to execute all instruments proper to patent any inventions relating to the IP Assets in the United States of America and foreign countries in the name of Assignee, and to execute all instruments proper to carry out the intent of this instrument.

In witness whereof, agreeing to be legally bound, this Assignment is executed and effective on the date indicated below.

QMAX INDUSTRIES, LLC

_____
Signature

_____
Dated

STATE OF _____ )
                                                            ) ss.
COUNTY OF _____ )

On the _____ day of _____, _____, before me personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the foregoing instrument, who acknowledged the instrument to be his/her free act and deed for the uses and purposes mentioned in the instrument.

_____
Notary Public
Printed Name:

My Commission Expires:
_____

## SCHEDULE A

1. U.S. Patent No. 8,469,082
2. U.S. Patent No. 8,899,310
3. U.S. Patent No. 8,662,156
4. U.S. Patent No. 9,841,239
5. U.S. Provisional Patent Appl. Ser. No. 61/120,425 (and all U.S. and foreign applications and patents claiming priority thereto)
6. U.S. Provisional Patent Appl. Ser. No. 61/167,023 (and all U.S. and foreign applications and patents claiming priority thereto)
7. U.S. Patent Appl. Ser. No. 13/154,142
8. U.S. Patent Appl. Ser. No. 14/556,057
9. U.S. Patent Appl. Ser. No. 15/484,109
10. U.S. Patent Appl. Ser. No. 15/484,111
11. U.S. Patent Appl. Ser. No. 15/484,112
12. U.S. Patent Appl. Ser. No. 15/484,115
13. U.S. Patent Appl. Ser. No. 15/484,117
14. U.S. Patent Appl. Ser. No. 15/484,120
15. U.S. Patent Appl. Ser. No. 15/484,123
16. PCT/US2009/066904

# Exhibit 2

Excepted Contracts

| Date | Buyer | End User Location | Amount |
|---|---|---|---|
| 6/13/18 | UO Group | Deer Park, TX | $100,000 |
| 8/21/18 | UO Group | Deer Park, TX | $100,000 |
| 8/16/18 | Virginia Heat Transfer | Hopewell, VA | $30,000 |
| 8/22/18 | Zirco | Calgary, AB | $75,000 |