# Exhibit G

**CONFIDENTIAL LEGAL COMMUNICATION**

**VIA EMAIL**

December 16, 2020

Mr. Thomas W. Perry
QMax Industries, LLC
520-A Eagleton Downs Dr.
Pineville, NC 28134
tperry@qmaxindustries.com

**Moore&VanAllen**

**J. Mark Wilson**
Attorney at Law

T 704 331 1177
F 704 339 5981
markwilson@mvalaw.com

Moore & Van Allen PLLC

100 North Tryon Street
Suite 4700
Charlotte, NC 28202-4003

**Re:     Breach of Settlement Agreement with Controls Southeast, Inc.**

Dear Tom:

As you know, Controls Southeast, Inc. ("CSI"), QMax Industries, Inc. and you (collectively, "QMax") are parties to a Settlement Agreement ("Agreement") effective as of August 29, 2018. We write with regard to QMax's breach of this Agreement.

As you know, QMax is prohibited by the terms of the Agreement from, *inter alia*, "selling products in the Sulfur Field, directly or indirectly, for a period of three (3) years from the Effective Date". Agreement, ¶ 4.1.  Section 4.0, in its entirety, states as follows:

**4.0     Restrictions on Defendants**

4.1     Defendants shall refrain from selling products in the Sulphur Field, directly or indirectly, for a period of three (3) years from the Effective Date (the "Exclusionary Period").

4.1.1. Limited Exception for Four Identified Contracts. Notwithstanding the restriction set forth in Section 4.1, QMax may, during the Exclusionary Period, complete the backlog of 4 contracts (listed in Exhibit 2) that it has in place as of August 24, 2018.  As a precondition to this limited exception, QMax shall first identify the parties and product quantities of these contracts to CSI.

4.1.2.  During the Exclusionary Period, QMax shall condition the sale of its products to its distributors and representatives in writing on the basis that no products sold by QMax to its distributors and/or representatives may be subsequently sold to, transferred to or otherwise used in the Sulphur Field.

> 4.1.3.  QMax and Perry thereof shall provide an annual declaration, attesting that neither has directly or indirectly sold into the Sulphur Field.  As detailed in Section 7.0, CSI shall have the right to verify compliance with Section 4.0.

> 4.2  Any breach of this Section 4.0 by any Defendant shall be a material breach of this Agreement.

"Sulfur Field" is defined in Section 1.2 of the Agreement as "industrial processes such as Sulphur recovery units and tail gas units, as well as any process which concerns the manufacture, transportation, or storage of any component which includes over twenty percent (20%) elemental sulfur or hydrogen sulfide."

Exhibit 2 to the Agreement lists four contracts, including two in Deer Park, TX dated 6/13/18 and 8/21/18.

You were previously notified of CSI's concerns regarding QMax's involvement with Texas Steam on a project at the Shell refinery in Deer Park, TX.  I direct your attention to the letter from Patrick, J. Farris, Esq. dated May 19, 2020.  In response to this letter, you submitted a declaration signed on May 26, 2020, swearing under penalty of perjury that "Neither I nor QMax has quoted, marketed and/or sold products into the Sulfur Field (as that term is defined in Section 1.2 of the Agreement), either directly or indirectly since the execution of the Settlement Agreement (with the exception of the contracts listed in Exhibit 2 to the Agreement)."

Then again, on November 16, 2020, you signed a further declaration that states, "I and QMax have complied with all of the requirements of Section 4.0 of the Settlement Agreement . . . Neither I nor QMax has directly or indirectly sold into the Sulfur Field since the execution of the Settlement Agreement (with the exception of the projects listed on the agreement)."

CSI has uncovered incontrovertible proof that QMax has breached its obligations under the Agreement and that you have committed perjury in submitting your recent declarations to CSI.

In particular, we understand that QMax has, directly or indirectly through Texas Steam, UO Group, LA Steam and/or Mr. Jay D'Amico, sold tracing as part of a sulfur transfer line installed, or in the process of being installed, at the Shell refinery in Deer Park, TX.  These facts were confirmed by the Shell project manager.

There can be no dispute that this sale is in the Sulphur Field, as defined in the Agreement.  There also can be no dispute that this sale is prohibited by Section 4 of the Agreement.  Given that this is a new installation using the geometry of "tube over channel" provided by QMax since the execution of the Agreement, this sale is not, and cannot be, part of the backlog of contracts from 2018 listed in Exhibit 2 to the Agreement.  Simply put, the only conclusion to be reached here is that you have intentionally, willfully, and maliciously breached the Agreement and, further, lied under oath about it to CSI on multiple occasions.

CSI is being harmed by your conduct, and demands the following remedial measures as a result:

1.  QMax must agree to extend the Exclusionary Period in the Agreement by twenty-four (24) months, or until August 29, 2023.

2.  QMax must agree to refrain from supplying product to Texas Steam, UO Group, LA Steam, and any business owned or operated by Jay D'Amico, during the Exclusionary Period. Obviously, given the multiple issues that CSI has had to address concerning QMax's conduct with one or more of these entities, they—and Mr. D'Amico in particular—cannot be trusted to abide by whatever instructions you have provided to them/him, including the written conditions outlined in Section 4.1.2 of the Agreement.

3.  QMax must provide signed declarations from each of its sales representatives and distributors, similar to the declarations you have provided to CSI, confirming that they have not sold, and will not sell, into sulfur during the Exclusionary Period. Given that your declarations have not been truthful, CSI must receive sworn statements directly from QMax's agents to ensure that no further breaches of the Agreement have occurred.

4.  QMax must pay to CSI the revenue QMax received on the Shell project mentioned above.

On behalf of CSI, we hereby demand that you immediately confirm your intention to comply with these terms offered by CSI. We must hear from you by no later than **December 23, 2020**. Should you fail to respond or provide the requested confirmation, we shall have no choice but to consider other means of legal enforcement. CSI provides these terms as an offer of compromise and expressly reserves all rights.

Should you have any questions regarding this letter, please do not hesitate to contact me.

Very truly yours,

MOORE & VAN ALLEN PLLC

J. Mark Wilson