# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### 3:21-cv-00302-MOC-DSC

| | |
|---|---|
| **CONTROLS SOUTHEAST, INC.,** | |
| **Plaintiff,** | **DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULES 12(B)(1) AND 12(B)(6)** |
| **v.** | |
| **QMAX INDUSTRIES, INC. and THOMAS W. PERRY,** | |
| **Defendants.** | |

In response to Defendants' motion to dismiss the complaint on jurisdictional grounds, Plaintiff purported to file an out-of-time amended complaint to add specious false advertising claims and factual embellishment to its RICO claim that only proves its deficiency. This is a dispute between non-diverse parties about the performance of a contract. It does not belong in federal court. Plaintiff's inability to comply with the rules of civil procedure only further proves the point. Defendants request that the Court treat Plaintiff's untimely amendment to the complaint as the nullity it is and grant their motion to dismiss so that this litigation may proceed in state court where it belongs.

### A. *Plaintiff Obtained Neither Consent Nor Leave for Its Belated Amended Complaint.*

Federal Rule of Civil Procedure 15(a) permits a party to "amend its pleading once as a matter of course within . . . 21 days after service of a motion under Rule 12(b) . . . ." The 2009 Advisory Committee Notes state that "the right to amend once as a matter of course terminates

21 days after service of a motion under 12(b), (e), or (f).  This provision will force the pleader to consider carefully and promptly the wisdom of amending to meet the arguments in the motion."

Defendants filed their motion to dismiss on November 1, 2021 [ECF 11], thus making any amendment as of right due no later than November 22, 2021.  *See* Fed. R. Civ. P. 15(a).  While Defendants' motion was pending, Plaintiff Controls Southeast, Inc. ("CSI") sought and obtained "a three-week extension of time to file its response to Defendants' Motion to Dismiss." [ECF 13.]  This Court approved CSI's motion to file a response to Defendants' motion, extending the deadline through and until December 6, 2021.  CSI did not, however, thereafter seek the consent of Defendants or leave of court to file an amended complaint in lieu of a response on that same extension schedule.  Thus, the putative December 6, 2021 First Amended Complaint [ECF 14] was filed two weeks beyond the 21-day period in which CSI could amend its complaint as of right.

It is black-letter law that "if an amendment that cannot be made as of right is served without obtaining the court's leave or the opposing party's consent, it is without legal effect and any new matter it contains will not be considered unless the amendment is resubmitted for the court's approval."  Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1484 (3d ed.).  The Fourth Circuit has taken a comparatively strict approach: "Under Rule 15, however, an amended complaint is not actually 'filed' until the court grants 'leave' for the amendment."  *Angles v. Dollar Tree Stores, Inc.*, 494 F. App'x 326, 329 (4th Cir. 2012) (unpublished).  The panel in *Angles* relied on a Fifth Circuit decision similarly holding that "[u]nder Rule 15(a), [the plaintiff] needed permission before his amended complaint could be filed, which he did not have on [the date of filing]." *U.S . ex rel. Mathews v. HealthSouth Corp.*, 332 F.3d 293, 296 (5th Cir. 2003).  Without this permission, such a filing has "no legal effect."  *Id.*; *see also Bledsoe v. MHI Hotels*

*Servs. T/A Holiday Inn-Brownstone*, No. 5:05-CV-607-D(3), 2006 WL 8438688, at *1 (E.D.N.C. July 25, 2006) (granting motion to strike second amended complaint because the complaint was filed without leave of the court or written consent and is therefore "deemed to be without legal effect").

Because CSI's purported amended complaint is simply a nullity, the rules allow, if not compel, this Court to ignore the amendment and consider the merits of Defendants' motion to dismiss. The most logical inference to draw from CSI's eleventh hour abandonment of defense of its original complaint and attempt to substitute a new one is that its first attempt to identify a RICO violation fell short of investing this Court with subject-matter jurisdiction over the contract dispute between these non-diverse parties. As a result, dismissal of this lawsuit in its entirety is the most appropriate remedy.

To be sure, this Court could consider CSI's purported amendment as a request that the Court grant CSI leave to amend its complaint in the form proposed. *Rutledge v. N. Carolina Dep't of Revenue*, No. 1:14-CV-45, 2014 WL 4262840, at *4 (M.D.N.C. Aug. 29, 2014) (accepting a belated amended complaint that cured defects in original pleading by adding additional facts to support the plaintiff's claims and because defendant would not be prejudiced by acceptance of the amended complaint). Yet Defendants are not asking that the Court dismiss meritorious federal claims on purely technical grounds that CSI has offered to cure merely by factual elaboration, however. As will be shown below, had CSI followed the amendment process prescribed by Rule 15 there would have been no ground on which to grant consent or grant leave to amend. The court would thus be left facing the same essential questions raised by Defendants' pending motion to dismiss: can the alleged breach of a contract with a three-year

term by two defendants injuring one plaintiff rise to the level of a RICO violation?   Because the answer is no, dismissal of this lawsuit is the appropriate remedy under all circumstances.

### B.      Plaintiff's Failure to Observe the Amendment Process, If Permitted, Will Prejudice Defendants.

When CSI realized that its RICO claim was indefensible, it belatedly decided to assert new federal claims instead of offer any kind of opposition to dismissal at all.  It honed in on two pictures from QMax's website that it says improperly display the former "channel over tube design" over which CSI now claims ownership.  [ECF 14 ¶ 100 & p 17.]   These *two pictures*, which actually link to the correct pictures of the product (*e.g*, ECF 14 p. 18, *citing* https://www.qmaxindustries.com/qmax-fts-steam), and do not refer whatsoever to CSI, supposedly amount to violations of the Lanham Act's prohibitions on false advertising and false designations of origin.  [ECF 14 ¶¶ 112-30.]  One of the two pictures is taken from so far away that it is impossible, or nearly so, to determine what product is actually depicted.  CSI's purported amendment does not identify any specific customer or potential customer who was confused by these images—likely because they always linked to the correct product images— and because CSI's complaint makes clear that QMax sells largely to distributors and representatives (who are intimately familiar through its products) and never directly through its website.

QMax regrets that it mistakenly carried over two pictures of its former products to the referenced page, which recently relaunched in early to mid-September 2021 and has been active for fewer than three months.  QMax has now corrected the page with up-to-date photos of QMax's products.  QMax is unaware of any customer, distributor or representative, who viewed those photos, let alone who relied on them in making a purchase.  It strains credulity to conclude

that CSI has a sincere belief that it lost business as a result of these pictures or was at the risk of doing so, but it did make for a last-ditch basis on which to keep this case in federal court.

Had CSI requested for consent or motion for leave to amend, in accordance with the requirements of Rule 15(a), QMax would have been alerted to these two pictures and promptly removed them. *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (noting that a district court can deny leave to amend "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.")  There can be no good-faith allegation that any customer has been actually misled by these photos in the past or that CSI has incurred any actual damages as a result. Accordingly, simple notice would have removed any basis on which to add these specious federal claims to this quintessential state-law dispute.  There is thus no reason to extend federal jurisdiction to it.

Furthermore, CSI's assertion that QMax has wrongfully sought to profit from product designs that CSI owns is another way of alleging that QMax has infringed upon CSI's patents. The settlement agreement between the parties that forms the basis of this dispute, however, contains a specific dispute-resolution mechanism by which CSI agreed that it "shall not bring suit for enforcement of any of the [disputed patents] before ninety (90) days following the initial notice to Defendants." [ECF 1-1 at 9 § 9.1.]  Accordingly, there is a substantial question about whether the new assertions of CSI's belated amended complaint, which did not abide by the dispute-resolution mechanism of the settlement agreement, must be dismissed and compelled to mediation were they treated as timely filed.  CSI's attempt to plead creatively in order to provide this Court other ostensible grounds for jurisdiction has in reality created a morass which threatens to swallow the primary focus of this lawsuit, which is an alleged breach of contract.

Accordingly, excusing CSI's failure to abide by Rule 15 will be prejudicial to Defendants. It will ensnare this Court into refereeing a state-law breach-of-contract dispute between non-diverse defendants where the federal claims ostensibly giving rise to jurisdiction are moot before the amended complaint is even deemed filed. This Court can and should exercise its jurisdiction not to grant leave to amend under these circumstances.

### C. CSI's Purported Amendment Underscores the Deficiencies of its RICO Claim and the Absence of any Basis for Federal Jurisdiction Here.

No amount of obfuscation and added verbiage can change the essential character of this dispute: an alleged breach of a contractual agreement between two North Carolina companies. If ever such a scenario could rise to the level of violating RICO, this cannot be the case. Congress's primary intent in enacting RICO was to use it to combat the proliferation of organized crime, especially the "predations of mobsters." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 245, 109 S.Ct. 2893, 2904 (1989); s*ee Russello v. U.S.*, 464 U.S. 16, 25, 104 S.Ct. 296, 302 (1983) (stating that RICO was passed with the intent to use it "in a broad assault on organized crime."). A RICO claim can arise only from allegations that the defendants engaged in, or conspired to engage in, a pattern of racketeering activity. 18 U.S.C. § 1962; *US Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317 (4th Cir. 2010). In order for there to be a "pattern of racketeering activity," there must be continuity between the predicate acts. *H.J. Inc.*, 492 U.S. at 239, 109 S.Ct. at 2900. Despite CSI's attempt to cure the deficiencies with its RICO claim from its initial Complaint, there can be no RICO claim because the facts as alleged show neither continuity nor deprivation of property.

First, as explained in Defendants' Brief in Support of Motion to Dismiss, the allegations in CSI's complaint cannot maintain a RICO claim because there was not a pattern of racketeering activity due to the lack of continuity in the alleged predicate acts. [ECF 12 at 9-11.]

To identify closed-ended continuity, the only type of continuity that is even potentially applicable here, CSI must show that the predicate acts extended over a substantial period. *H.J. Inc.*, 492 U.S. at 242, 109 S.Ct. at 2902. Not only do the acts need to extend over a substantial period, the scheme as a whole must have a sufficiently wide scope. *See Menasco, Inc. v. Wasserman,* 886 F.2d 681, 684 (4th Cir. 1989). Nothing in CSI's purported Amended Complaint identifies a substantial time or a sufficiently wide scope.

Although CSI's Amended Complaint now specifies a total of five, rather than three, supposedly deceitful communications over the course of sixteen months, these allegations are still woefully short of alleging continuity. [ECF 14 ¶ 86.] Courts within the Fourth Circuit have held that even longer and more frequent schemes than the one alleged here lack sufficient continuity to violate RICO. *See Myers v. Finkle,* 758 F. Supp. 1102, 1113 (E.D. Va. 1990) *aff'd in part and rev'd in part,* 950 F.2d 165, 169 (4th Cir. 1991) (dismissing a complaint alleging a single scheme over the course of four years, involving fifteen separate investments). A total of five emails or letters over less than one and a-half years cannot demonstrate the requisite continuity for a RICO claim.

Further, the Amended Complaint does nothing to cure the initial Complaint's narrow scheme. Narrow schemes, targeting few victims and involving few fraudulent acts are not within the purview of RICO because there is not a distinct threat of long-term criminal activity. *Menasco, Inc.*, 886 F.2d at 684 (quoting *H.J. Inc.*, 492 U.S. at 241, 109 S.Ct. at 2902). RICO's pattern requirement is absent where the claim is based on "a single, non-recurring scheme to defraud a single entity by taking unfair competitive advantage in a quite narrow business context." *Eastern Publ'g and Advert. Inc. v. Chesapeake Publ'g and Advert.*, 895 F.2d 971, 972 (4th Cir. 1990). That is exactly what is alleged here—a single, non-recurring scheme to deceive

one entity.  The Amended Complaint does nothing to change this.  Indeed, the Amended Complaint actually implicitly narrows the claim further by making Perry the singular defendant to the RICO claim.  A single-defendant, single-victim scheme is the antithesis of a RICO enterprise.

Additionally, as explained in the Brief in Support of Motion to Dismiss, CSI's RICO claim and amended RICO claim fail to identify predicate acts.  [ECF 12 at 5-9.]  A RICO claim requires the elements of at least two predicate acts.  Here, CSI uses alleged acts of mail or wire fraud to support its RICO claim.  The elements to mail or wire fraud are that the defendant (1) devised or intended to devise a scheme to defraud and (2) used mail or wire communications in furtherance of that scheme.  *U.S. v. Wynn*, 684 F.3d 473, 477 (4th Cir. 2012) (citing *U.S. v. Jefferson*, 674 F.3d 332, 366 (4th Cir. 2012)).  The element "to defraud" means the wronging of another in his or her property rights. *Wynn*, 684 F.3d at 477-78.  Thus, for there to be mail or wire fraud, it is essential that the victim actually had an interest in money or property obtained by the defendant.  *U.S. v. Gillion*, 704 F.3d 284, 295 (4th Cir. 2012).

Neither the Complaint nor the Amended Complaint alleges that CSI had either.  Although the Amended Complaint alleges that CSI lost potential sales as a result of Perry's false statements [ECF 14 ¶¶ 156-157], CSI has no property interest in *potential* sales.  Further, even with the chance to amend, CSI has still failed to allege that QMax or Perry obtained anything from CSI by making these representations.  That CSI audited and sued QMax and Perry despite the representations that are the very basis of its RICO claim underscores this absence.  Nothing in CSI's Amended Complaint changes the fact that QMax and Perry did not gain anything from these representations and that CSI did not lose anything from these representations.

At bottom, the facts as alleged in CSI's Amended Complaint still have nothing to do with combating organized crime or the predations of mobsters. CSI's RICO claim still alleges a narrow and infrequent series of events, taking place over the course of sixteen months, targeting only one individual entity, who was not deprived of any money or property. Such allegations are simply not within the purview of RICO, and as such, the RICO claim should be dismissed.

Because this lawsuit involves a state-law dispute between non-diverse parties, this Court should grant Defendants' motion to dismiss. CSI's RICO claim should be dismissed with prejudice and its state law claims without prejudice, where they can be re-filed in state court.

This 13th day of December, 2021.

/s/ Brian L. Church
Brian L. Church
N.C. Bar No. 39581
BChurch@robinsonbradshaw.com
Timothy P. Misner
N.C. Bar No. 56364
TMisner@robinsonbradshaw.com

**ROBINSON, BRADSHAW & HINSON, P.A.**
101 N. Tryon St., Ste. 1900
Charlotte, North Carolina 28246
Telephone: 704.377.2536
Facsimile: 704.378.4000

*Counsel for Defendants*