# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## 3:21-cv-00302-MOC-DSC

| | |
|---|---|
| **CONTROLS SOUTHEAST, INC.,**<br><br>**Plaintiff,**<br><br>v.<br><br>**QMAX INDUSTRIES, INC. and THOMAS W. PERRY,**<br><br>**Defendants.** | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** |

## <u>INTRODUCTION</u>

This is the rare instance where Defendants are arguing to litigate in two separate cases in two separate courts over claims that they admit are factually connected. Defendants' proposal is the antithesis of judicial economy and a continuation of the decidedly impractical approach to federal court litigation that they have exhibited throughout this case. (*See, e.g.,* ECF #17 at p. 4). Given that Defendants acknowledge that "this Court has subject-matter jurisdiction over Plaintiff's Lanham Act claims" (ECF #19 at p. 1), this case will proceed in this Court regardless of the outcome of Defendants' Partial Motion to Dismiss. That said, Defendants' Partial Motion to Dismiss under Rule 12(b)(1) should be denied because this Court has original jurisdiction over at least Plaintiff's Lanham Act claims (Counts I and II) and has supplemental jurisdiction over Plaintiff's state law claims (Counts IV-VII) because these claims form part of the same case or

controversy as Plaintiff's federal claims.[1] Once the Court determines that the facts of Plaintiff's

Lanham Act claims and state law claims are at least loosely connected and fall under the umbrella

of this Court's broad jurisdictional grant, Defendants' Motion must fail.

Defendants' focus their Motion to Dismiss on Plaintiff's RICO claim, and ask the Court to

dismiss it under Rule 12(b)(6), arguing that this case allegedly is nothing more than a breach of

contract dispute. Defendants continued attempts to reframe this case as something that it is not

ignores the extensive factual allegations pled by Plaintiff, which the Court must accept as true at

this stage of the proceeding. As Plaintiff's Amended Complaint sets forth, while the settlement is

fundamentally involved in Plaintiff's claims, this case is about much more than Defendants' breach

of the Settlement Agreement. Since the settlement of the first litigation between these parties,

Defendants have committed serious offenses, continued to inflict further harm on Plaintiff,

deceived Plaintiff as to their actions, deceived others as to their products, cost Plaintiff money, and

damaged Plaintiff's business through a brazenly unlawful scheme. As Plaintiff has properly pled

in great detail in its Amended Complaint, Perry's seven (at least) false and misleading statements

in furtherance of this scheme over the course of almost three years are tantamount to a RICO

violation. Thus, this claim survives Defendants' dismissal bid under Rule 12(b)(6).

As Plaintiff's Amended Complaint also shows, all of Plaintiff's claims, under the Lanham

Act, RICO and state law, are factually interrelated, and, as a result, the Court has an additional

basis for supplemental jurisdiction over the state law claims based on Plaintiff's well-pleaded

RICO claim. Given the overlap between evidence and witnesses for all of Plaintiff's federal and

---

[1] Defendants have requested dismissal of Plaintiff's RICO claim (Count III); however, for the reasons discussed below in Section II, this claim should not be dismissed and provides further grounds for supplemental jurisdiction in this case.

state claims, it would be a waste of judicial resources to have duplicative proceedings in two different courts, and Defendants' Partial Motion to Dismiss should be denied in its entirety.

<u>**FACTUAL BACKGROUND**</u>

This is not the first time that Plaintiff has been forced to bring litigation against these Defendants. In the earlier case, *Controls Southeast, Inc. v. QMax Industries, Inc. et al.*, Case No. 3:16-cv-00230-FDW-DSC ("CSI I"), QMax and Perry, along with their other co-defendants, were accused by Plaintiff of trade secret misappropriation, breach of contract, and unfair competition. In CSI I, Plaintiff also brought claims for declaratory judgment of non-infringement by ownership of three patents. CSI I was eventually resolved by settlement on August 29, 2018, after two years of litigation. (ECF #14-1 – Ex. A).

QMax and Perry agreed in the Settlement Agreement to refrain from selling products in the "Sulphur Field," directly or indirectly, for a period of three years from the effective date, or until August 29, 2021. (*Id.* at ¶ 4.1). Also as part of the Settlement Agreement, Defendants assigned to Plaintiff all right, title and interest in and to certain intellectual property rights, including certain patents and patent applications and all inventions disclosed therein, which included rights to specific products sold by Defendants at that time. (ECF #14 at ¶ 95). QMax and Perry were also required to "provide an annual declaration, attesting that neither has directly or indirectly sold into the Sulphur Field." (ECF #14-1 – Ex. A at ¶ 4.1.3). The parties also agreed to a limited exception for four identified contracts, which Plaintiff learned later Perry had falsely represented before the effective date of the Settlement Agreement. (*Id.* at ¶¶ 21-31).

Despite these restrictions, QMax and Perry continued to make sales in the Sulphur Field during the Exclusionary Period and lied to Plaintiff about their compliance with the Settlement Agreement. (ECF #14 at ¶¶ 48-63; 79-86). Worse yet, QMax and Perry engaged in a bait-and-

switch on customers in the market, advertising that they could sell them certain products when they could not because those products were actually owned by Plaintiff. These facts, which are involved in all of Plaintiff's claims, are set forth in detail in the "Facts Common to All Counts" section of Plaintiff's Amended Complaint. (*Id*. at p. 3).

On June 24, 2021, Plaintiff filed its Complaint against Defendants for breach of contract, unfair and deceptive trade practices, fraud, conspiracy, and violation of the Racketeer Influenced and Corrupt Organizations (RICO) Act. (ECF #1). On November 1, 2021, Defendants filed a Motion to Dismiss the Complaint. (ECF #11). Plaintiff properly filed an Amended Complaint on December 6, 2021. (ECF #14). The Amended Complaint asserts claims for unfair competition under the federal Lanham Act (15 U.S.C. § 1125), breach of contract, unfair and deceptive trade practices, fraud, conspiracy, and RICO. Plaintiff added sixty-one additional paragraphs in the Amended Complaint and further details to existing paragraphs, *inter alia*, to moot Defendants' arguments in its original Motion to Dismiss (ECF #12). Indeed, eighteen of these paragraphs were specifically added under the RICO count. (ECF #14 at ¶¶ 132-137, 143-149, and 155-159). Plaintiff also added its Lanham Act claims and related factual allegations, which further showed without any doubt that this Court has jurisdiction in this case. (*Id*. at ¶¶ 112-130). This point was confirmed by Defendants when they did <u>not</u> move to dismiss Plaintiff's Lanham Act claims.[2]

---

[2] Despite arguing in a footnote that Plaintiff's Lanham Act claims are "without merit" (ECF #20 at p. 17, n.2), Defendants admittedly did not move to dismiss these claims. Defendants falsely suggest (and claim that they "are confident") that CSI will withdraw its Lanham Act claims. (*Id*.). To be clear, Plaintiff has no intention of withdrawing these claims. It is rather ironic that Defendants now argue that these claims are without merit when they previously apologized for them. (ECF #15 at p.4) ("QMax regrets that it mistakenly carried over two pictures of its former products to the referenced page[.]"). Even so, Defendants continue to misstate the law on Plaintiff's Lanham Act claims when they posit that "CSI's Lanham Act claims were undoubtedly asserted without any factual investigation into whether any customer was misled or whether CSI suffered any actual injury." (ECF #20 at p. 17, n.2). "The third element of the reverse passing off claim, consumer confusion, requires a showing that a 'substantial number . . . of consumers
*(continued on next page)*

Undeterred, Defendants filed another Motion to Dismiss (ECF #20), this time only a "partial" motion, but with large portions copied-and-pasted from their original motion (ECF #12), and without consideration of the significant allegations added by Plaintiff showing that Defendants' arguments are without merit.

## ARGUMENT

### I. The Court Has Supplemental Jurisdiction Over Plaintiff's State Law Claims.

Supplemental jurisdiction under 28 U.S.C. § 1367 "is a broad jurisdictional grant." *Exxon Mobil Corp. v. Allapattah*, 545 U.S. 546, 558-59 (2005). Under 28 U.S.C. § 1367(a), if a federal court has original jurisdiction over a claim in a civil action, it also has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." Claims form "part of the same case or controversy" if they "derive from a common nucleus of operative fact . . . [and] are such that . . . [they] would ordinarily be expected to . . . [be tried] in one judicial proceeding." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966); *see also Hartman v. Univ. of Maryland at Baltimore*, 595 F. App'x 179, 180 (4th Cir. 2014). In determining whether to exercise supplemental jurisdiction, federal district courts consider section 1367's goals of promoting

---

**are likely to be misled**.'" *Universal Furniture Int'l, Inc., v. Collezione Europa USA, Inc.*, 618 F.3d at 438 (4th Cir. 20210) (quoting *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 280 (4th Cir. 2002)) (emphasis added). "As the Sixth Circuit has observed, when a 'defendant has taken the plaintiff's product and has represented it to be his own work,' it is 'difficult to imagine how a designation of origin of a product could be more false, or could be more likely to cause confusion or mistake as to the actual origin of the product.'" *Universal Furniture*, 618 F.3d at 438-39 (quoting *Johnson v. Jones*, 149 F.3d 494, 503 (6th Cir. 1998)). Similar to *Universal Furniture*, Defendants have misrepresented Plaintiff's product as their own, which would of course be likely to cause confusion. *See also LStar Dev. Grp., Inc. v. Vining*, No. 5:20-CV-184-FL, 2021 U.S. Dist. LEXIS 181972, at *20 (E.D.N.C. Sep. 23, 2021); *Bennett v. Zydron*, No. 2:17-cv-92, 2017 U.S. Dist. LEXIS 154539, at *17-18 (E.D. Va. Aug. 17, 2017). Plaintiff has properly pled its claims under the Lanham Act, and these claims will proceed in this Court regardless of the outcome of Defendants' Partial Motion to Dismiss.

5

"principles of [judicial] economy, fairness, convenience and comity." *Hartman*, 595 F. App'x at 180 (quoting *Carnegie-Mellon v. Cohill*, 484 U.S. 343, 357 (1988)). "Most federal courts require only a **loose factual connection** between the claims to satisfy the requirement that the claims arise from a common nucleus of operative fact." *Bennett v. Fastenal Co.*, 184 F. Supp. 3d 304, 308 (W.D. Va. 2016) (finding assault and battery claims against a supervisor arose from the same case or controversy as a Title VII claim against her employer) (internal quotation marks and citations omitted) (emphasis added).

Defendants assert that all that is required is that "state law claims must share factual overlap with federal claims in order to enable the exercise of supplemental jurisdiction over them." (ECF #20 at p. 17). It is uncontroverted that this Court has original jurisdiction over at least Plaintiff's Lanham Act claims. Plaintiff's state law claims clear the low hurdle for supplemental jurisdiction. In fact, Defendants actually <u>admit</u> factual overlap when they state that "[t]here is nothing in common between these sets of operative facts **beyond the identities of the parties and the fact that they settled a dispute amongst themselves in August 2018.**" (ECF #20 at 16) (emphasis added). Even though this is an oversimplification of the pleaded facts, Defendants' admission is enough to deny their motion. The facts surrounding the settlement, and the Settlement Agreement itself, are common to all claims. This is evident in Plaintiff's Amended Complaint, where Plaintiff's "Facts Common to All Counts" section, which is incorporated by reference into all of Plaintiff's claims, details how the Settlement Agreement contains the terms that establish the factual foundation for Plaintiff's state and federal claims, including the Exclusionary Period and Excepted Contracts provisions (s*ee, e.g.,* ECF #14 at ¶¶ 13-22) and the assignment of rights provision to the channel over tube product design (*see, e.g.,* ECF #14 at ¶ 95). Plaintiff's RICO claim is based on the activities of Defendants selling in the Sulphur Field after settlement. (*See,*

*e.g.,* ECF #14 at ¶¶ 143-147, 155-156). Plaintiff's Lanham Act claims involve the unlawful activities of Defendants in advertising and selling products they did not own in the Sulphur Field after settlement. (*See, e.g.,* ECF #14 at ¶¶ 99-100, 121).[3] All of Plaintiff's state law claims involve the facts surrounding the settlement and, indeed, reference the Settlement Agreement. (*See, e.g.,* ECF #14 at ¶¶ 162-163, 166, 168, 173-175, 179-185). None of Plaintiff's claims—including Plaintiff's Lanham Act claims (which Defendants have <u>not</u> sought to dismiss) and Plaintiff's state law claims (which Defendants would like to be dismissed from this case)—are separately determinable without *any* reference to the facts alleged with regard to the other counts. It simply cannot be done. Under such circumstances, supplemental jurisdiction over Plaintiff's state law claims is proper. *See Norcom v. Novant Health*, No. 3:20-CV-673-RJC-DCK, 2021 U.S. Dist. LEXIS 154451, at *12-13 (W.D.N.C. July 16, 2021) ("As in *Jimenez-Orozco v. Baker Roofing Co.*, 'each claim is not separately determinable without any reference to the facts alleged with regard to the other count,' and therefore, supplemental jurisdiction over Plaintiff's state law claim is proper.") (quoting *Jimenez-Orozco v. Baker Roofing Co.*, No. 5:05-CV-34-FL, 2006 U.S. Dist. LEXIS 103187, at *15 (E.D.N.C. Mar. 28, 2006)).

Despite this, Defendants are advocating for this Court to approve a fracture of this case into two, with Plaintiff's Lanham Act claims (Counts I and II) to be litigated in this Court and its state law claims (Counts IV-VII) to be litigated in state court. Duplicative proceedings in both

---

[3] Defendants criticize Plaintiff for when and how it brought its Lanham Act claims, arguing (incorrectly) that "[t]he manner in which CSI added the Lanham Act Claims to this case reveals that they are factually distinct from the State Law Claims." (ECF #20 at p. 16). This Court has already determined that Plaintiff rightfully filed its Amended Complaint; as a result, that Plaintiff did not bring its Lanham Act claims in its original pleading should not and cannot influence the Court's decision on Defendants' Partial Motion to Dismiss. *See Young v. City of Mount Ranier*, 238 F.3d 567, 573 (4th Cir. 2001) ("The general rule ... is that an amended pleading supersedes the original pleading, rendering the original pleading of no effect."). Defendants' form-over-substance procedural argument is without merit.

state and federal courts will waste the resources of the courts and the parties. *Shaughnessy v. Duke Univ., Private Diagnostic Clinic, PLLC*, No. 1:18-CV-461, 2018 U.S. Dist. LEXIS 196355, at \*16 (M.D.N.C. Nov. 19, 2018) ("For reasons of judicial economy, fairness, and convenience, the Court exercises its discretion to retain the state law claims against PDC."); *SV Int'l, Inc. v. Fu Jian Quanyu Indus. Co.*, 820 F. Supp. 2d 677, 693 (M.D.N.C. 2011) (noting that "one basis for exercising supplemental jurisdiction is the need to avoid duplicative evidence for the sake of judicial economy"); *United States ex rel. Triangle Grading & Paving v. J.W. Cook & Sons*, No. 5:97-CV-682-BR(1), 1998 U.S. Dist. LEXIS 18419, at \*9 (E.D.N.C. Sep. 28, 1998) ("Because the Miller Act claim falls exclusively within the federal courts' jurisdiction, supplemental jurisdiction is especially appropriate: hearing all of the claims together serves judicial economy by preventing duplicative litigation.") (internal quotation marks and citations omitted); *Tucker v. Sponaugle*, Civil No. 94-784-R, 1995 U.S. Dist. LEXIS 12077, at \*5-6 (W.D. Va. July 17, 1995) (deciding to exercise supplemental jurisdiction because it "promotes judicial economy; if the claims are separated, virtually identical evidence will be heard in two different courts, one state and one federal"); *see also Sanders v. Smith Debnam Narron Drake Sainsting & Myers, LLP*, No. 19-CV-410, 2020 U.S. Dist. LEXIS 155813, at \*15 (M.D.N.C. Aug. 26, 2020) (exercising supplemental jurisdiction over the state law claims because "both claims will require the same factual findings").[4]

---

[4] As an obvious example of Defendants' erroneous position, they are asking for the same claim—Plaintiff's unfair and deceptive trade practices claim at Count VII—to be litigated by the same parties at the same time in two different courts. Plaintiff has pled multiple grounds for this claim, including Defendants' conduct in violating the Lanham Act, and violation of the Lanham Act is a violation of the UDTPA. *See, e.g., Cpi Sec. Sys. v. Vivint Smart Home*, No. 3:20-CV-00504-FDW-DSC, 2021 U.S. Dist. LEXIS 216182, at \*12 (W.D.N.C. Nov. 9, 2021) ("It is therefore well settled in North Carolina that unfair competition under the Lanham Act, as a misappropriation of benefits which flow from the quality of a competitor's product, may constitute unfair or deceptive practices under the UDTPA.") (citing *Harrington Mfg. Co. v. Powell Mfg. Co.*, 38 N.C. App. 393, 404, 248 *(continued on next page)*

Other decisions show that the exercise of supplemental jurisdiction in this case is appropriate. For example, in *Chattery Int'l, Inc. v. Jolida, Inc.*, No.:WDQ-10-2236, 2011 U.S. Dist. LEXIS 32399 (D. Md. Mar. 23, 2011), the complaint included a federal Lanham Act claim and state law claims for unauthorized use and registration of a trademark in violation of a contract, breach of contract, common law unfair competition, trademark infringement, unjust enrichment, and conversion. *Id.* at \*18, n.16. The court reasoned that it had supplemental jurisdiction over the state law claims because of the factual overlap, including the contract itself. *Id.* at \*25 (citing *N. Am. Van Lines, Inc. v. Atl. Transfer & Storage Co.*, 487 F. Supp. 2d 672, 674 (D.S.C. 2007), where the court exercised supplemental jurisdiction over a state law contract claim because that claim and the plaintiff's Lanham Act claims all "require[d] the court to interpret [an agreement]"). As set forth below, the Settlement Agreement between the parties is central to this case and is part of the overlapping facts that will be used to prove (and presumably defend) all of Plaintiff's claims.

Similarly, the court in *BLT Restaurant Group LLC v. Tourondel* exercised supplemental jurisdiction after determining that there would be significant overlap in evidence premised on the history between the parties. 855 F. Supp. 2d 4, 11-12 (S.D.N.Y. 2012). As the *BLT* court stated, "it is to be expected that the entire context of the parties' original relationship and the events leading to, and following, the breach would be offered in evidence even if the federal claim were the only one being litigated here." *Id*. at 11. The same can be said of the history between Plaintiff

---

S.E.2d 739, 746 (1978)); *Shell Trademark Mgmt. BV v. Ray Thomas Petroleum Co.*, 642 F. Supp. 2d 493, 505 (W.D.N.C. 2009) ("Trademark infringement and false designation of origin are deceptive and unfair acts; if a plaintiff proves a violation of the Lanham Act, which affected commerce, and injured plaintiff, plaintiff is entitled to summary judgment on claims brought under North Carolina's UDTP.") (citation omitted). Plaintiff's Lanham Act claims (Counts I and II) will move forward in this Court and, therefore, the Court must also retain Plaintiff's unfair and deceptive trade practices claim (Count VII). If Defendants' motion is granted, this same claim will be litigated by the same parties at the same time in two different courts, using overlapping facts, witnesses, and evidence.

and Defendants.  The history here—including the events giving rise to *CSI I*, the Settlement Agreement, and Defendants' conduct after settlement—will be offered in evidence for all claims. It would be impossible to try any of these claims without it.

Defendants make the mistake of arguing that this Court can only exercise supplemental jurisdiction over state law claims if those claims share the same legal, as opposed to factual, elements.  (*See* ECF #20 at p. 16).  Defendants show their misunderstanding of supplemental jurisdiction when they argue that "[t]hese [Lanham Act] claims have no relationship, however, to the state-law claims on which this lawsuit is [allegedly] centered."  (ECF #20 at p. 5).  Whether the legal claims are related is not the proper inquiry.  This Court has already stated that "it is immaterial how different the elements forming the respective state and federal causes of action are. Rather, all that matters for determining whether supplemental jurisdiction exists is if a plaintiff alleges the same core set of **facts** to support the respective state and federal-law claims."  *Hall v. Bank of Am. Corp.*, No. 3:18-cv-00108-RJC-DSC, 2019 U.S. Dist. LEXIS 7774, at \*9 (W.D.N.C. Jan. 11, 2019) (emphasis added).  The *BLT* case echoed this sentiment, stating that the exercise of supplemental jurisdiction "does not depend upon a diagrammatic abstracting of the bare elements of the federal claim in order to define the minimum theoretically necessary evidence to prove or disprove the claim.  Rather, the court should look to whether the evidence likely to be used in the specific case in addressing the federal claim is likely to substantially overlap that used to address the state-law claims."  855 F. Supp. 2d at 11 (citations omitted).  No reasonable party can deny that this overlap exists in this case.

Just like in *Norcom*, it would be impossible to separate out the facts in Plaintiff's Amended Complaint from those that support only one claim or another—all are factually connected by the parties, their history, their earlier litigation and settlement, and the activities of Defendants in

selling products in the Sulphur Field—and these overlapping facts provide essential context for all of Plaintiff's claims, federal and state alike. These well-pleaded allegations, which the Court must accept as true at this stage of the case, show that there is a factual connection running through all of Plaintiff's claims that is at least, if not significantly more than, loose. When combined with the broad jurisdictional grant afforded this Court, the Court has supplemental jurisdiction over Plaintiff's state law claims.[5]

## II. Plaintiff Has Sufficiently Pled a Valid RICO Claim.

Defendants continue to attack Plaintiff's RICO claim for meritless reasons. In order to succeed on a civil RICO claim, "a private RICO plaintiff must allege (1) conduct (2) of an enterprise[6] (3) through a pattern (4) of racketeering activity" and show that "(5) he was injured in his business or property (6) by reason of the RICO violations." *Borg v. Warren*, 545 F. Supp. 3d 291, 310 (E.D. Va. 2021) (internal quotation marks and citations omitted). The RICO statue also makes clear that "racketeering activity" includes any act in violation of the mail and wire fraud statutes. *Id.* The two essential elements of the crimes of wire fraud under 18 U.S.C. § 1343 and mail fraud under 18 U.S.C. § 1341 are: "(1) the existence of a scheme to defraud and (2) the use of wire communication or the mails in furtherance of that scheme." *Id.* at 311 (citation omitted). Plaintiff has set forth extensive factual allegations in its Amended Complaint to support each of these elements.

---

[5] It should also be noted that Defendants have not argued that any of the exceptions enumerated in 28 U.S.C. § 1367(c) are applicable in this case. Regardless, none of the exceptions for declining supplemental jurisdiction exist here, and it would be improper for Defendants to argue them in reply. *See* L. Civ. R. 7.1(e); *Fusco v. NorthPoint ERM, LLC*, No. 3:15CV289, 2016 U.S. Dist. LEXIS 4254, at *2-3 (W.D.N.C. Jan. 13, 2016) ("Reply briefs may not inject new grounds and any argument that was not contained in the main brief or raised in opposition is not before the Court.") (internal quotation marks and citations omitted).

[6] Defendants have not challenged the existence of an "enterprise" and, therefore, have conceded that this element is met by Plaintiff's well-pleaded allegations in its Amended Complaint.

### A. Plaintiff Has Alleged Predicate Acts.

Defendants argue that the Amended Complaint "fails to identify a justiciable federal claim under RICO because it does not actually allege, nor could it allege, predicate acts of mail and wire fraud arising out of the alleged breach of a settlement agreement." (ECF #20 at p. 7). To be clear, Plaintiff has not alleged that the predicate acts of mail/wire fraud are simply due to Defendants' breach of the Settlement Agreement. The predicate acts of mail/wire fraud all relate to Defendants' fraudulent representations when first entering into the Settlement Agreement and continued fraudulent representations thereafter, whereas Plaintiff's claim for breach of contract is premised on the actual breach of the Settlement Agreement due to Defendants' sales into the Sulphur Field during the Exclusionary Period.

Defendants go on to implore the Court to be very cautious about a RICO claim that is based on predicate acts of mail and wire fraud. (ECF #20 at p. 7). However, there is no "per se rule against a RICO claim involving only mail and wire fraud." *Capital Lighting & Supply, LLC v. Wirtz*, No. JKB-17-3765, 2018 U.S. Dist. LEXIS 140711, at \*23 (D. Md. Aug. 20, 2018). "It is one thing to approach such claims cautiously, but it is quite another to preclude all RICO claims based on mail and wire fraud." *Id.* This is not a case of "garden-variety fraud," but instead represents a serious unlawful scheme by Perry to actively deceive Plaintiff as to Defendants' activities within the Sulphur Field in order to make sales that Defendants were precluded from making. (ECF #14 at ¶¶ 4, 24, 29, 30, 66, 77, 154-159). Perry used mail/wire numerous times over the course of years in furtherance of this scheme. (*Id.* at ¶¶ 84, 86, 91, 92, 143-147).

Next, Defendants argue that the mail/wire fraud by Perry did not deprive CSI of anything of value, which is simply nonsensical. (ECF #20 at pp. 7-8). CSI had a valid interest in the money that Defendants received from the fictitious contracts listed in the Settlement Agreement and the

additional sales CSI could have made absent Perry's misrepresentations over the course of many years. (ECF #14 at ¶¶ 154-159). There are a limited number of domestic providers of steam tracing solutions, and CSI had prior existing relationships with the customers that Defendants sold to when they should not have. (*Id.* at ¶155). Plaintiff relied on the misrepresentations when entering into the Settlement Agreement and for a significant period of time thereafter, until Plaintiff came to discover the truth. Perry's misrepresentations lulled Plaintiff into a false sense of reality and allowed Defendants to make sales to their benefit and Plaintiff's detriment. (*Id.* at ¶ 47, 63, 144). Thus, Perry's fraudulent affirmations were not "fruitless," as Defendants claim. (ECF #20 at p. 8). All of these factual allegations are included in Plaintiff's Amended Complaint.

Such allegations also are not "conclusory," as Defendants contend, and go well beyond the one paragraph cited by Defendants. (ECF #20 at p. 9 citing ECF #14 at ¶ 85). For example, Plaintiff alleged in its Amended Complaint that it had existing relationships with each of the customers to which Defendants sold, and lied about selling, products. (ECF #14 at ¶¶ 64-66, 158-159). Plaintiff further alleged that Defendants' false statements when entering into the Settlement Agreement and Perry's continued false declarations and correspondence since the Settlement Agreement led CSI to lose at least four contracts. (*Id.* at ¶¶ 66, 77, 84, 86, 156-57). Continuing, Plaintiff alleged that its business was injured as a direct and proximate result of Perry's acts. (*Id.* at ¶¶ 153-54, 156-57). Without Perry's misrepresentations, Plaintiff believes that it would have been successful in obtaining new contracts with these customers. (*Id.* at ¶¶ 158, 159). Plaintiff was unaware of Defendants' continued sales into the Sulphur Field during the Exclusionary Period by virtue of Perry's continued affirmations of compliance with the Settlement Agreement and therefore was not aware of the competition for contracts with its existing customers. (*Id.* at ¶ 47, 155).

Each of the circumstances surrounding the allegations of mail/wire fraud are pled with particularity. (*Id.* at ¶¶ 143-147). The individual responsible, the locations involved, the date, who the communication was transmitted to, the contents of the communications, how the statements are false, and what Perry gained from these statements (*Id.* at ¶¶ 153-159) are all provided. Defendants' reliance on *Chubirko v. Better Bus. Bureau of S. Piedmont, Inc.*, 763 F. Supp. 2d. 759 (W.D.N.C. 2011) as supposed support is misplaced. (ECF #20 at p. 9). Plaintiff's Amended Complaint is distinguishable from the one at issue in *Chubirko*, where the plaintiff failed to plead "the time, place, and content of the false representations, the person making them, and what the person gained from them." *Id.* at 767 (internal quotation marks and citations omitted). In the present case, all of these facts are included in Plaintiff's Amended Complaint.

Finally, there is no exception from RICO just because a contract happens to be involved, as Defendants seem to suggest. (ECF #20 at p. 9). In fact, at least one other court within the Fourth Circuit denied a motion to dismiss RICO counts where the defendants' made misrepresentations to induce the plaintiffs into entering and paying on a contract that defendants never had the intention of fulfilling. *Borg*, 545 F. Supp. 3d at 312. In *Borg*, the "[d]efendants promised a (trained) dog, and [p]laintiffs paid for a (trained) dog, but [d]efendants did not deliver a (trained or even untrained) dog." *Id.* at 311. The court rejected an argument very similar to Defendants' claim that this is a simple breach of contract case, explaining that:

> If Defendants purported to sell fine art, inducing customers to advance thousands of dollars to them with the promise of delivering a masterpiece, only to reveal that the masterpiece never existed, they never intended to procure it and they planned to deliver a fake instead, hoping that customers would not recognize the difference, Defendants' actions would not amount to a simple "breach of contract," and the parties would not attempt to claim that the buyer suffered no injury. Likewise, Plaintiffs clearly suffered injury as a result of Defendants' scheme regardless of whether they received a dog, because they relied on promises that Defendants' never intended to fulfill to Plaintiffs' financial detriment. *Id.* at 330.

This reasoning applies to the present case.  This case is not just about a breach of contract—Defendants entered into the Settlement Agreement with no intent of ever abiding by its terms, just like the *Borg* defendants.  Defendants lied at the outset about their intentions and about the supposed existence of fictious contracts in order to induce Plaintiff to give up substantial claims in *CSI I*.  Defendants then made continued misrepresentations to hide the truth, hoping that Plaintiff would never know the difference.  Plaintiff relied on these misrepresentations to its financial detriment.  The scheme to defraud Plaintiff and the predicate acts have been sufficiently pled.

**B.  Plaintiff Has Alleged a Sufficient Pattern of Racketeering Activity.**

It is notable that Defendants largely copied and pasted their section A.3 from their previous Motion to Dismiss and, thus, ignore the additional allegations added in the Amended Complaint can that show that Defendants' conduct was hardly a "short-lived, infrequent scheme".  (*Compare* ECF #12 at pp.9-11 *with* ECF #20 at pp. 10-13).  The seven predicate acts of mail/wire fraud spanning over the course of almost three years, from August 29, 2018 to June 2, 2021, demonstrate that the scheme was far from infrequent and short-lived.  (ECF #14 at ¶¶ 143-149).

Defendants' continuity analysis is hyper-focused, erroneously, on the time frame.  (ECF #20 at pp. 10-12) ("racketeering activities over the course [of] six or more years present close questions of closed-ended continuity"; "fraction of the period found to be insufficient to allege closed-ended continuity in *Myers*").  Time frame, while important, is not determinative.  *See Treads USA, LLC v. Boyd LP I*, Civil Action No. 1:08cv00027, 2010 U.S. Dist. LEXIS 67324, at *24 (W.D. Va. May 4, 2010) ("While the relevant time frame is certainly an important factor to consider, as discussed above, when examining whether a pattern of racketeering activity has occurred, such a determination is factually sensitive and must be viewed on a case-by-case basis. . . . So, while the time frame of the alleged activities will be taken into consideration, it will

15

not be determinative as to whether a pattern of racketeering activity took place.") (citation omitted).

In fact, the Supreme Court has specifically eschewed any specific test for determining continuity. *See H.J. Inc v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 241 (1989) (finding that "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement [of continuity]", but also finding that racketeering activity can be "done in a variety of ways . . . making it difficult to formulate in the abstract any general test for continuity"). The Supreme Court added that "'continuity' is both a closed- and open-ended concept, referring either to a closed or repeated conduct, or to past conduct that by its nature projects into the future with the threat of repetition." *Id.*

In its Amended Complaint, Plaintiff set forth a series of related predicate acts extending over a period of almost three years, which exceeds the "just more than two years" that has been found to be sufficient in other cases. *See, e.g., Treads USA,* Civil Action No. 1:08cv00027, 2010 U.S. Dist. LEXIS 67324, at *24; *see also Cooke & Moses, Ltd. Liab. Co. v. QSS-Engineered Sys. Grp., Ltd. Liab. Co.*, No. 1:06-CV-147, 2007 U.S. Dist. LEXIS 63650, at *31 (N.D.W. Va. Aug. 28, 2007) (finding predicate acts extending over a nineteen-month period of time sufficient to allege a RICO pattern); *Venzor v. Gonzalez*, 936 F. Supp. 445, 451 (N.D. Ill. 1996) (holding that a scheme over an 18-month period is sufficiently long to support closed-ended continuity). Defendants also ignore that the relevant time period began at least as of August 29, 2018. (ECF #20 at p. 12). The Amended Complaint makes clear that Perry's fraudulent statements began with listing false contracts in the Settlement Agreement that did not exist as of August 29, 2018. (ECF #14 at ¶¶ 30, 143). Defendants' argument that the Amended Complaint does not specify when or how this fraudulent communication was made is baseless as the Amended Complaint is abundantly

clear that it was by mail/wire on the execution date of the Settlement Agreement (August 29, 2018). (*Id*. at ¶ 143). The Amended Complaint also alleges that Perry's false statements continued up to June 2, 2021. (*Id.* at ¶ 147). This resulted in at least seven predicate acts over the course of almost three years, as properly pled in detail by Plaintiff. (*Id.* at ¶ 143-149). Thus, the Amended Complaint has alleged sufficient continuity for a valid RICO claim.

**C. There Is No Per Se Rule Against a RICO Claim Involving Only One Victim.**

Again, it is notable that Defendants simply copied and pasted their section A.4 from their previous Motion to Dismiss and did not even attempt to counter the additional allegations added in Plaintiff's Amended Complaint. (*Compare* ECF #12 at pp.11-14 *with* ECF #20 at pp. 13-15). Nevertheless, Defendants claim Plaintiff's allegations "do not warrant RICO treatment because they do not exceed what exists in customary fraud cases" and that only a narrow scheme is described. (ECF #20 at p. 14-15). Contrary to Defendants' assertion, the Amended Complaint adds additional details of seven predicate acts of mail/wire fraud spanning over the course of almost three years, from August 29, 2018 to June 2, 2021. (ECF #14 at ¶¶ 143-149). The Amended Complaint further details how Defendant Perry's false statements led Plaintiff to detrimentally rely on the fraudulent communications relating to at least four contracts. (*Id.* at ¶¶ 154-159). Thus, the scheme is not as narrow as Defendants would like the Court to believe.

Moreover, Defendants are incorrect that a scheme must have a "sufficiently wide scope" in order to qualify as a "pattern of racketeering activity" under the RICO statute. (ECF #20 at p. 13). "There is no per se rule against a RICO claim involving only one victim." *Capital Lighting & Supply, LLC*, 2018 U.S. Dist. LEXIS 140711, at *23 (citation omitted). Such arguments by Defendants "ignore the Fourth Circuit's admonition to look at the totality of the circumstances in evaluating the pattern element." *Id.*

Furthermore, the instant case is not comparable to that of *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225 (4th Cir. 2000), which involved a dispute between former family friends. Despite Defendants' attempt to characterize this as a "garden-variety business dispute," the detailed factual allegations in the Amended Complaint demonstrate that Perry devised a scheme to deceive Plaintiff and thereby deprive Plaintiff of contracts with companies with which Plaintiff had prior existing relationships. (ECF #14 at ¶¶ 64-66, 158-159). Perry's calculated plan to list contracts in the Settlement Agreement that did not exist, sell products Defendants were prohibited from selling in this field, and make continued misrepresentations over the course of years to Plaintiff about Defendants' conduct is far more than "garden-variety". (*Id.* at ¶¶ 4, 24, 29, 30, 77, 84, 86, 143-149). Defendants induced Plaintiff to enter into a Settlement Agreement that Defendants never planned to honor. (*Id.* at ¶¶ 63, 78). Perry continued to lie even through the audit process. (*Id.* at ¶¶ 88-92, 147). Defendants' actions have consistently been contrary to their words, with Perry telling Plaintiff that Defendants were complying with the Settlement Agreement while, at the same time, Defendants acted in complete disregard of the settlement terms. (*Id.* at ¶ 98). Thus, Plaintiff has sufficiently alleged conduct of an enterprise through a pattern of racketeering activity, which injured its business. Defendants' request to dismiss Plaintiff's RICO claim should be denied.[7]

## **CONCLUSION**

For the foregoing reasons, Defendants' Partial Motion to Dismiss should be denied.

---

[7] To be clear, even if Plaintiff's RICO claim (Count III) were to be dismissed, this Court still has jurisdiction in this case over Plaintiff's federal Lanham Act claims (Counts I and II) and related state law claims of Fraud (Count IV), Civil Conspiracy (Count V), Breach of Contract (Count VI) and Unfair and Deceptive Trade Practices (Count VII).

18

Respectfully submitted,

Dated: May 5, 2022
*s/ J. Mark Wilson*
J. Mark Wilson
N.C. State Bar No. 25763
MOORE & VAN ALLEN PLLC
100 North Tryon Street, Suite 4700
Charlotte, North Carolina 28202
Telephone (704) 331-1000
Facsimile (704) 339-5981
Email: markwilson@mvalaw.com

*Attorney for Plaintiff*

19