UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-302-MOC-DSC

| CONTROLS SOUTHEAST, INC., | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | ORDER |
| QMAX INDUSTRIES, INC., THOMAS W. PERRY, | ) | |
| Defendants. | ) | |

**THIS MATTER** comes before the Court on a Motion for Judgment on the Pleadings, filed by Plaintiff Controls Southeast, Inc. ("Plaintiff or CSI") as to the counterclaims for abuse of process and unfair and deceptive trade practices filed by Defendants Qmax Industries, Inc. ("QMax") and Thomas W. Perry ("Perry"). (Doc. No. 42).

### I. BACKGROUND

Plaintiff CSI and Defendant QMax are direct competitors in the heat transfer industry, as they "compete for sales of steam tracing products." (Doc. No. 14, First Am. Compl. ¶ 106; Doc. No. 26, Answer and Countercls. ¶ 6). In 2016, Plaintiff sued Defendants QMax and Perry, asserting a number of claims. (Id. ¶ 6). The parties resolved the 2016 litigation by a Settlement Agreement on August 29, 2018. (Answer and Countercls. ¶ 8). Relevant to the current lawsuit, the Settlement Agreement contained a provision in which Defendants agreed that they would not sell heat transfer products into the "Sulphur Field," as defined by the Settlement Agreement, for an "exclusionary period" of three years. (Id. ¶ 9). The Settlement Agreement's no-Sulphur-sales-provision contained an express exception for four contracts in place before the parties executed

1

the agreement, as summarized in an exhibit that was appended to the Settlement Agreement. (Id. ¶¶ 9–10).

Shortly before the termination of the exclusionary period, Plaintiff invoked an audit provision in the Settlement Agreement, which required Defendants to provide Plaintiff with access to their records so that Plaintiff could verify compliance with the Settlement Agreement. (Id. ¶¶ 16–17). Defendants complied with the request and the auditor ultimately produced a report finding that QMax's aggregate sales within the Sulphur Field from the excepted contracts were less than the total amount the parties agreed that QMax was allowed to sell. (Id. ¶¶ 18–21). Despite the auditor's findings, Plaintiff filed a complaint on June 24, 2022, accusing Defendants of breach of contract, unfair and deceptive trade practices, fraud, conspiracy, and violation of the Racketeer Influenced and Corrupt Organizations Act. (Doc. No. 1).

According to Defendants, Plaintiff did not attempt to serve the lawsuit on Defendants at the time it was filed, but instead used it to attempt to extract an anticompetitive settlement from Defendants. (Countercls. ¶¶ 30–31). In a letter to Defendants sent after the filing of the complaint, Plaintiff demanded that: (1) QMax agree to extend the Sulphur field exclusionary period by thirty-six months; (2) QMax agree to refrain from supplying product to at least three customer-suppliers during the additional exclusionary period; (3) QMax pay Plaintiff the revenue QMax received on Shell and Calumet projects mentioned in the Complaint; and (4) QMax reimburse Plaintiff for the costs of the audit (that determined no financial losses to Plaintiff) and what amounted to a further audit of other obligations under the Settlement Agreement. (Id. ¶¶ 32–36). Defendants assert that their counterclaims for abuse of process and unfair and deceptive trade practices derive principally from the demands of this post-litigation correspondence— demands that are plainly anti-competitive and cannot be achieved in litigation irrespective of the

merit of that litigation. (See, e.g., id. ¶ 31) ("By sending the June 24, 2021 letter after the filing of the complaint and for approximately 90 days thereafter, Plaintiff maliciously attempted to leverage the Complaint to get QMax and Perry to agree to terms that a court would be unable to order, even if Plaintiff's litigation succeeded.").

Plaintiff served Defendants on September 20, 2021. (Id. ¶¶ 44–45; Doc. Nos. 4, 5). Defendants moved to dismiss Plaintiff's initial compliant on November 1, 2021. (Doc. No. 11). In response, on December 6, 2021, Plaintiff filed and served an amended complaint which added two claims for violation of the Lanham Act as well as further factual allegations relating primarily to the Lanham Act claims, wherein Plaintiff asserted that Defendants' conduct in posting two outdated pictures and an outdated informational chart on its website was likely to confuse, cause mistake, or deceive the public as to the ownership of the design of the product, the affiliation between QMax and Plaintiff, as well as whether QMax was selling Plaintiff's product. (First Am. Compl. ¶¶ 100–21).

Defendants moved to dismiss the Amended Complaint based not on the substance of Plaintiff's allegations but the propriety of litigating its claims in federal court, (Doc. No. 19), and this Court allowed Plaintiff's claims to proceed in this forum, (Doc. No. 25). Defendants answered the Amended Complaint and asserted counterclaims against Plaintiff for unfair and deceptive trade practice as well as abuse of process (, which Plaintiff moved to dismiss, (Doc. No. 28). On September 23, 2022, this Court denied Plaintiff's motion, finding that Defendants "alleged sufficient facts on their counterclaims to survive Plaintiff's Rule 12(b)(6) motion to dismiss." (Doc. No. 34).

Thereafter, Plaintiff answered the counterclaims and the parties agreed to a discovery plan and exchanged discovery requests. (Doc. Nos. 36, 37). On January 13, 2023, Plaintiff

3

moved for judgment on the pleadings on Defendants Counterclaims, arguing that those claims are barred by an absolute litigation privilege for false statements relating to litigation. (Doc. No. 55). Defendants filed a response on January 27, 2023, and Plaintiff filed a Reply on February 3, 2023. (Doc. Nos. 43, 44).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings when it would not delay trial. FED. R. CIV. P. 12(c). "A motion for judgment on the pleadings under Rule 12(c) is assessed under the same standards as a motion to dismiss under Rule 12(b)(6)." Occupy Columbia v. Haley, 738 F.3d 107, 115 (4th Cir. 2013) (citing Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). Therefore, under Rule 12(c), a claim must be dismissed when a claimant's allegations fail to set forth a set of facts which, if true, would entitle the claimant to relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (holding that a claim must be facially plausible in order to survive a motion to dismiss). When considering a motion for judgment on the pleadings, as with a motion to dismiss, the Court is "obliged to accept the complaint's factual allegations as true and draw all reasonable inferences in favor of the plaintiffs." Feminist Majority Found. v. Hurley, 911 F.3d 674, 685 (4th Cir. 2018). "However, the court need not accept the legal conclusions drawn from the facts, and need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Monroe v. City of Charlottesville, Va., 579 F.3d 380, 385–86 (4th Cir. 2009) (internal citations and quotations omitted).

## III. DISCUSSION

The Court will deny the motion for judgment on the pleadings for the reasons stated in Defendants' brief in opposition. That is, the purpose of the litigation privilege affirmative

4

defense is to shield a party from litigating disputes regarding the truth of statements made in litigation. See Andrews v. Elliot, 109 N.C. App. 271, 275, 426 S.E.2d 430, 432 (1993). The torts of defamation, libel, and slander all have at their core a contest over the truth of the communicator's speech. Desmond v. News and Observer Publ'g Co., 241 N.C. App. 10, 16, 772 S.E.2d 128, 134–35 (2015) (noting that falsity is an element of all three claims).

Here, the counterclaims are for abuse of process and unfair and deceptive trade practices. While North Carolina courts have applied the litigation privilege affirmative defense in defamation actions, Plaintiff has not pointed to any cases in which the privilege has been applied to abuse of process, or unfair and deceptive trade practices claims, where the counterclaims do not require a judge or jury to adjudicate the truth or falsity of any litigation-related statement made by Plaintiff. See Harris v. NCNB Nat'l Bank, 85 N.C. App. 669, 673 (1987) (where the plaintiff sued the defendant, who was an attorney, asserting claims for defamation, attempted extortion, intentional infliction of emotional distress, and unfair and deceptive trade practices based on statements the attorney made in a letter to another attorney during litigation, applying the litigation privilege to dismiss the plaintiff's defamation claim, but declining to apply the litigation privilege to the plaintiff's claim for unfair and deceptive trade practice based on statements made relating to litigation).

Here, the tort of abuse of process does not measure the truth of any statement in litigation. Instead, its elements are simply that (1) the defendant has an ulterior motive and (2) commits some act that is a malicious misuse or misapplication of process after issuance to accomplish a purpose that is not warranted or commanded by the process. Pinewood Homes v. Harris, 184 N.C. App. 597, 602, 646 S.E.2d 826, 831 (2007). Likewise, the "sham litigation" claim recognized under the Unfair and Deceptive Trade Practices Act does not depend on the

5

falsity of the allegations within the underlying litigation. <u>I-Minerals USA, Inc. v. Zielke</u>, No. 1:15cv94, 2015 WL 5457840, at *3 (W.D.N.C. Sept. 16, 2015) ("A party may be held liable for bringing a 'sham' lawsuit against a competitor, which is a lawsuit 'objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits.'") (quoting <u>Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.</u>, 508 U.S. 49, 60 (1993)). Rather, litigation can be "objectively baseless" where the defendant fails to conduct any factual investigation to verify the allegations in its pleadings, regardless of whether the plaintiff alleges those pleadings to be false. <u>Id.</u> at *4. Here, the alleged improper conduct at the heart of Defendants' counterclaims has nothing to do with the truth or falsity of Plaintiff's statements. Thus, Defendants have pleaded conduct sufficient to sustain its abuse of process and unfair and deceptive trade practice counterclaims that are separate and distinct from the falsity of Plaintiff's allegations, and the litigation privilege does not apply.

## IV. CONCLUSION

For the reasons stated herein, the Court denies Plaintiff's motion for judgment on the pleadings as to Defendants' counterclaims.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

(1) Plaintiff's Motion for Judgment on the Pleadings, (Doc. No. 42), is **DENIED**.

Signed: March 27, 2023

Max O. Cogburn Jr
United States District Judge

6