UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-302-MOC-DSC

| CONTROLS SOUTHEAST, INC., | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | **ORDER** |
| QMAX INDUSTRIES, INC., THOMAS W. PERRY, | ) | |
| Defendants. | ) | |

**THIS MATTER** comes before the Court on the parties' motions to exclude. (Doc. Nos. 79, 84). Defendants move to exclude the expert report and testimony of Plaintiff's expert witness Glenn Newman. (Doc. No. 79). Plaintiff likewise moves to exclude portions of defense expert Carson Hannah's expert opinions and testimony. (Doc. No. 84). Both motions are fully briefed and ripe for disposition. See (Doc. Nos. 79, 101, 106, 84, 94, 112).

I.  BACKGROUND

Plaintiff and Defendants sell heat transfer systems to industrial customers. In 2016, Plaintiff sued Defendants for trade secret misappropriation, breach of contract, unfair competition, and patent claims. That litigation terminated with a 2018 settlement agreement. According to that agreement, Defendants assigned to Plaintiff patents related to the design of a first-generation Fluid Tracing System ("FTS") product and pledged specifically to "remove all reference to the [FTS] on its web pages and advertisements and cease all use of any materials referencing the [FTS]." (Doc. No. 14-1, § 2.2.3). Defendants also agreed not to sell products into the Sulphur field for an exclusionary period of three years, with exceptions granted for four

1

contracts allegedly in place at the time the settlement agreement was executed (i.e., the "excepted contracts").

Following the settlement, Defendants developed a new heat transfer product, FTS Generation 2 ("Gen. 2"). As required under the settlement agreement, Defendants amended their marketing materials to remove references to the first-generation FTS. (Doc. No. 75 at 5). Nonetheless, some of Defendants' post-settlement marketing materials continued to depict FTS Gen. 1. (Doc. No. 87-6). Following the development of FTS Gen. 2, Defendants disseminated a chart indicating that the second-generation product performs better than FTS Gen. 1. (Doc. No. 100, Ex. 13). Purporting to avail themselves of the excepted contracts provision of the 2018 settlement agreement, Defendants also sold their Gen. 2 product into the Sulphur field.

Plaintiff again sued Defendants in 2021, raising claims of false advertising and false designation of origin under the Lanham Act; racketeering under RICO; common law fraud, civil conspiracy, and breach of contract; and unfair and deceptive trade practices under North Carolina Law. (Doc. No. 14). Plaintiff retained Mr. Glenn Newman as an expert to calculate the revenues and profits earned by Defendants in connection with their sales into the Sulphur field and sales of FTS Gen. 2 products after the effective date of the settlement agreement. (Doc. No. 101 at 1). Defendants offer Carson Hannah, an employee of QMax Industries, LLC, to opine on tests he designed and performed in 2019 (before Plaintiff instituted this litigation) showing that Defendants' Gen. 2 product performs better than the Gen. 1 product for which Plaintiff holds the patent. (Doc. No. 94 at 1).

## II. LEGAL STANDARD

Each party moves to exclude the other's expert under Federal Rule of Evidence 702. That Rule requires that an expert's opinion testimony be "the product of reliable principles and

2

Case 3:21-cv-00302-MOC-SCR   Document 118   Filed 05/14/24   Page 2 of 8

methods" and "based on sufficient facts or data." Rule 702(a)-(d). Enforcing Rule 702, Courts act as "gatekeepers" ensuring that expert testimony is both relevant and reliable. Bresler v. Wilmington Tr. Co., 855 F.3d 178, 195 (4th Cir. 2017); Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 199 (4th Cir. 2001) (citing Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 588 (1993)).

The Supreme Court's decision in Daubert guides the Court's assessment of an expert's reliability. The non-exhaustive "guideposts" articulated in Daubert include: (1) whether the expert's theory or technique "can be (and has been) tested"; (2) whether the theory or technique has been subject to prior review and publication; (3) "the known or potential rate of error" inherent in the expert's theory or technique; and (4) whether the expert's methodology is generally accepted in his field of expertise. Sardis v. Overhead Door Corp., 10 F.4th 268, 281 (4th Cir. 2021) (citing Nease v. Ford Motor Co., 848 F. 2d 219, 229 (4th Cir. 2017) and Daubert, 509 U.S. at 593–94)); see also Kumho Tire Co. v. Carmichael, 526 U. S. 137, 153, (1999). The Court's reliability assessment must focus "solely on principles and methodology, not on the conclusions that they generate." Daubert, 509 U.S. at 595. Finally, the principles enumerated in Daubert do not apply "to all experts or every case," because trial courts have "broad latitude" to determine which Daubert factors (or additional factors absent from the Daubert analysis) offer "reasonable measures of reliability in a particular case." Sardis, 10 F.4th at 281 (citation omitted).

The proponent of expert testimony bears the burden to establish its admissibility by a preponderance of the evidence. Cooper, 259 F.3d at 199.

### III. DISCUSSION

    a. **Defendants' Motion to Exclude Mr. Newman**

Plaintiff offere Mr. Newman as a damages expert. (Doc. No. 101 at 1). Defendants move to exclude Mr. Newman's testimony as unreliable because he fails to establish a causal link between his damages calculations and Defendants' alleged wrongdoing. (Doc. No. 80 at 6). Specifically, Defendants contend that

> [f]or an expert report to be admissible to prove disgorgement of profits under the Lanham Act, the expert must do more than assume a correlation between the alleged wrongdoing and the profits; the expert must instead examine causation between the alleged wrongdoing and the estimate of damages. See Verisign, Inc. v. XYZ.COM LLC, 848 F.3d 292, 299–301 (4th Cir. 2017).

(Id.).

Defendants rely on the Fourth Circuit's decisions in Verisign and PBM Prods., LLC v. Mead Johnson & Co., 639 F.3d 111, 122 (4th Cir. 2011) for the proposition that a damages expert must establish causation by tracing ill-gotten gains to wrongdoing alleged in the complaint. (Doc. No. 80 at 8). Defendants misread the case law. In Verisign, the Fourth Circuit upheld the district court's exclusion of an expert report on reliability grounds for failing to distinguish between correlation and causation. 848 F.3d at 300. But unlike Mr. Newman here, the Verisign expert was offered to opine on causation itself, not merely damages. Id. The same was true of the exclusion blessed by the Fourth Circuit in PBM. 639 F.3d at 122.

Next, Defendants seize on the Fourth Circuit's dicta in Tyger Construction Co. Inc. v. Pensacola Construction Co., arguing that "[a]n expert's opinion as to damages must be causally related to the alleged harm." 29 F.3d 137, 142 (4th Cir. 1994). Defendants over-state the law. First, assuming (as he may) that the jury accepts Plaintiff's contention that the parties are direct competitors in a two-supplier market, Mr. Newman's disgorgement analysis is "causally related to the alleged harm." Second, the facts of Tyger Construction do not support the broad reading Defendants propose. There, the expert's opinion on damages was predicated on a "fact"

4

undermined by uncontradicted record evidence. Tyger Construction, 29 F.3d at 142. Defendants fail to show that a similar scenario exists here. There is, at very least, a genuine dispute over whether the parties are direct competitors in a two-supplier market.

Defendants further contend that "[t]he unreliability of Mr. Newman's opinion is exacerbated by the astronomical amount of profits he contends that Defendants owe." (Doc. No. 80 at 9). But this argument contradicts the Daubert Court's command that district court reliability assessments focus "solely on principles and methodology, not on the conclusions that they generate." Daubert, 509 U.S. at 595. Defendants' objection goes to the weight accorded to Mr. Newman's testimony, not to its admissibility.

Finally, Defendants argue that Mr. Newman's report is unreliable because it does not apportion damages amounts to each of Plaintiff's claims. (Doc. No. 80 at 10). Defendants rely on the Fourth Circuit's decision in Pharmanetics, Inc. v. Aventis Pharms., Inc. for the proposition that an expert's "failure to apportion the disgorgement of profits as to each claim renders his opinion unreliable because there is no way for the factfinder to differentiate which profits are attributable to which claims." (Doc. No. 80 at 11) (citing 82 F. App'x 267, 272–73 (4th Cir. 2006) (per curiam)). Defendants again over-state the law. In Pharmanetics, the district court deemed the expert's testimony misleading (not unreliable) "because [1] it was a lump sum, [2] not sufficiently tied to Appellee's possible conduct, and [3] too speculative." 82 F. App'x at 272. The Fourth Circuit concluded that the latter two justifications were independently sufficient to justify the district court's exclusion. Id. at 273. Those justifications are absent here.

The Court recognizes the merit of Defendants' claim that Mr. Newman's disgorgement analysis could mislead a jury, since Plaintiff is <u>not</u> entitled to a disgorgement remedy on all their claims. (Doc. No. 80 a 10–11). The Court will address this issue if it materializes at trial.

5

For the foregoing reasons, the Court will deny Defendants' motion to exclude.

### b. Plaintiff's Motion to Exclude Mr. Hannah

Defendants offer Mr. Hannah, a QMax employee, to opine regarding a test that he performed to compare the performance of the Gen. 1 and Gen. 2 FTS products. Mr. Hannah is a Rule 26(a)(2)(C) witness: because he was not retained or specifically employed to provide expert testimony, he is not required to provide a written report listing the facts and data he considered in arriving at his opinion. FED. R. CIV. P. 26(a)(2)(B)(ii). Instead, Mr. Hannah need only provide a disclosure stating "the subject matter on which [he] is expected to present evidence" and "a summary of the facts and opinions to which [he] is expected to testify." See FED. R. CIV. P. 26(a)(2)(C). Plaintiff moves to exclude Mr. Hannah on the basis that his conclusions "are not based on sufficient facts or data and are not the product of reliable principles and methods." (Doc. No. 84-1 at 7).

In 2019, before Plaintiff brought this suit, Mr. Hannah conducted a test apparently showing that Defendants' Gen. 2 FTS product performed between 5% and 15% better (in terms of heat transfer) than the Gen. 1 FTS product. Mr. Hannah's Rule 26(a)(2)(C) report did not contain any data from this test. (Doc. No. 84-1 ¶ 15). When he conducted this test, Mr. Hannah failed to record the total amount of heat-transfer compound used to connect the FTS products to their respective process pipes, which could affect the performance of the FTS products. (Id. ¶¶ 16–17). Mr. Hannah admitted that, based on his 26(a)(2)(C) report alone, it would be impossible to evaluate or recreate his analysis. (Id. ¶¶ 19–20).

Plaintiff argues that Mr. Hannah's conclusions—specifically regarding the 5% to 15% improvement in heat transfer performance between Gen. 1 and Gen. 2—are properly excluded as "subjective belief or unsupported speculation." Daubert, 509 U.S. at 591. Because Mr. Hannah's

6

report did not contain the data on which he based his conclusion, Plaintiff contends that "Mr. Hannah's opinions are based on no facts or data—nevermind sufficient ones—and must therefore be excluded." (Doc. No. 84-1 at 10). But Mr. Hannah's Rule 26(a)(2)(C) report was not required to include the data upon which his conclusion was based. See FED. R. CIV. P. 26(a)(2)(B)(ii). And Plaintiff's contention that no such data exists is belied by the spreadsheets produced by Defendants in response to Plaintiff's discovery requests, which apparently contain the data underlying the 2019 tests. (Doc. No. 94 at 3). Indeed, while Mr. Hannah may have testified that it would be impossible to evaluate the tests based on his 26(a)(2)(C) report alone, he later testified that, if given an opportunity to review those spreadsheets, he could testify about the relationship between the data and his conclusions. (Id.).

Next, Plaintiff contends that Mr. Hannah's report should be excluded as unreliable because it has not "been subjected to peer review and publication," Sardis, 10 F.4th at 281, and is not falsifiable because Mr. Hannah failed to record the amount of heat-transfer compound used. (Doc. No. 84-1 at 10–12). But peer review and publication—while one indicator of reliability—is hardly a requirement for admissibility under Daubert's gloss on Rule 702. See Kumho, 526 U.S. at 151. And questions regarding the factual basis for the expert's opinion (i.e., the amount of compound used in testing) tend to "affect the weight and credibility of the witness' assessment, not its admissibility." Bresler, 855 F.3d at 195. Plaintiff's challenge to the reliability of Mr. Hannah's conclusions is best addressed not by the Court's gatekeeping function, but instead by "[v]igorous cross-examination" and "presentation of contrary evidence" at trial. Daubert, 509 U.S. at 596.

For the foregoing reasons, the Court will deny Plaintiff's motion to exclude.

7

Case 3:21-cv-00302-MOC-SCR   Document 118   Filed 05/14/24   Page 7 of 8

## IV. CONCLUSION

For the reasons stated above, the parties' motions to exclude will be denied. The parties' critiques are not without merit, but they ultimately go to the weight, not the admissibility, of the relevant testimony. Atl. Coast Pipeline, LLC v. 0.07 Acre, More or Less, 396 F. Supp. 3d 628, 635 (W.D. Va. 2019) (citing Bresler, 855 F.3d at 195–96). The Court will not allow its gatekeeping role to usurp or replace the adversary system. In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod. Liab. Litig.(No. II), 892 F.3d 624, 631 (4th Cir. 2018).

## ORDER

**IT IS, THEREFORE, ORDERED** that the parties' motions to exclude, (Doc. Nos. 79, 84), are **DENIED**.

Signed: May 14, 2024

Max O. Cogburn Jr.
United States District Judge